Donald Allen, a Minor, by His Father and Next Friend, Willie R. Allen, Plaintiff-Appellant, v. Willie Yancy, Defendant-Appellee.

Gen. No. 49,431.

First District, First Division.

March 29, 1965.

Unger & Unger, and Louis P. Miller, of Chicago, for appellant.

Charles D. Snewind, Orner & Wasserman, of Chicago (Norton Wasserman and Robert E. Gillespie, of counsel), for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

In this action for personal injuries which was brought by Willie R. Allen on behalf of his minor son, Donald, the plaintiff appeals from a judgment entered upon a jury verdict in favor of the defendant. The plaintiff contends that the verdict is against the manifest weight of the evidence and that it was induced by a prejudicial, attempted impeachment of one of the plaintiff's witnesses.

Since no question concerning damages is raised here, the following summary of the facts is limited to evidence on the issue of liability. The incident in question occurred on Calumet Avenue, between 43rd and 44th Streets in Chicago, opposite a small playground on the east side of Calumet where children were playing. Children were also playing ball on Calumet Avenue near 43rd Street and adults and children were sitting on the curbs and porches along Calumet. The incident took place at about six o'clock on the evening of April 20, 1956, at which time it was still daylight. The defendant, who was familiar with the neighborhood and had observed the children playing ball in the street near 43rd Street, was driving south on Calumet at a speed which he testified to be between 10 and 15 miles per hour. It is uncontroverted that cars were parked along both sides of the street, except immediately in front of the playground, where, according to one of the plaintiff's eyewitnesses, there were no parked cars and according to another there were some parked cars. At one point north of the scene of the accident there were two double parked cars. The defendant testified that he slowed his speed when he passed these cars, but the plaintiff's eyewitness, Reverend James L. Tukes, testified that the defendant was traveling about 15 to 20 miles per hour without slowing up before striking the plaintiff.

As the defendant approached the playground, the plaintiff ran or trotted out into the street from the east side; at the same time another child started to cross the street at the same point, but from the west side of the street. The defendant testified that he saw neither boy and that all he knew "was the impact from my right, to the right of my car and I stopped and I put on my brakes." One eyewitness said the left front of the car struck the plaintiff; another testified that the plaintiff got completely across the street and was

struck by the front of the defendant's car; Reverend Tukes testified that the right front fender or bumper struck the plaintiff.

We do not believe that the jury's verdict was against the manifest weight of the evidence. Courts of review ordinarily will not disturb the verdict of a jury who are in a superior position to determine the credibility of the witnesses and the proper weight to be given to their testimony. Manifest weight has been defined as that weight which is clearly evident, clear, plain and indisputable. Hocker v. O'Klock, 24 Ill App2d 259, 164 NE2d 225. In order for the verdict of the jury to be against the manifest weight of the evidence, it must appear that a conclusion opposite to that reached by the jury must be clearly evident from the evidence, or that the jury's verdict is palpably erroneous and wholly unwarranted by the manifest weight of the evidence. Vasic v. Chicago Transit Authority, 33 Ill App2d 11, 180 NE2d 347. Whether the defendant was negligent under the facts summarized above was a matter for the jury. We cannot say that a conclusion opposite to that reached by the jury was clearly evident from the evidence or that the verdict was palpably erroneous. Hence we conclude that the verdict was not against the manifest weight of the evidence.

However, after a careful search of the record, we think that the jury was influenced in its conclusion by an improper examination and certain remarks made by the defendant's counsel which deprived the plaintiff of a fair trial. This improper examination arose in connection with the defendant's unsuccessful attempt to impeach Reverend Tukes, one of the plaintiff's eye-witnesses, by the use of a statement which he was alleged to have made to the police after the occurrence. At the outset of his cross-examination of Reverend Tukes, the defendant's counsel asked to see a paper which he said the plaintiff's counsel had been using.

It appears that this was a request for what the defendant's counsel believed to be a copy of the police report. Nowhere in the record is the exact character of this document made clear, however. After a brief discussion among counsel and the court concerning the nature of the document in question, the defendant's counsel asked Reverend Tukes if he had seen the alleged police report in the office of the plaintiff's attorney. The witness admitted that he had seen the report, but he denied making the various statements which the defendant's counsel quoted or paraphrased from what appears to be in his copy of the alleged report. Finally the defendant's attorney improperly remarked, "I am going to have this police officer in here. I know at times a man cannot remember, but the memory does strange things." Shortly thereafter, the defendant's counsel asked the witness, apparently quoting from the alleged police report, "Could this accident have been avoided. Did the police ask you that?" The plaintiff objected and there followed a second discussion concerning the plaintiff's document which was alleged to be the police report. Finally the court said, "Let this be between you two. You will have to clear that up." The defendant's counsel then improperly stated, "I will expect the original police report and bring in the police officer who took this statement, and we will have the Reverend and those that were there and will bring them tomorrow, and the police officer who made it. He signed this statement which he gave the police. This is your copy and the original will be there."

Again quoting from his copy of the alleged police report, the defendant's attorney continued the cross-examination of Reverend Tukes, as follows:

> Q. Did the police ask you, Reverend, could this accident have been avoided, and you answered "yes?"

A. I said I didn't know.

Q. All right. Did they ask you anything else that you would like to tell Counsel that is there, and you answered, "the only thing I can truthfully say is that the driver was not responsible." Did you?

A. They didn't ask.

Having laid this as a foundation for impeachment, the defendant subsequently called three police officers as impeaching witnesses. The first officer, Charles Wilson, was asked if he brought the police report in response to a subpoena served on him. He testified that he had not done so because his search revealed that the report was not in the file where such reports are kept.

The second officer called by the defendant was Lieutenant John Coyle, one of the officers assigned to investigate the occurrence in question. Officer Coyle testified that he talked to the defendant after the occurrence and interviewed the injured at the hospital. Then he was asked:

Q. As to his [defendant's] condition, did you observe anything unusual about his condition?

A. I can't recall anything about his condition.

Q. No tickets issued?

A. There was no summons issued, no.

Q. For violations did you give—

At this point the plaintiff objected, but the court made no ruling.

The other investigating officer, Claude Zuchowski, was called by the defendant's counsel, who, after some preliminary examination of the witness, said to plaintiff's counsel, "I have a copy of the statement copied

by your office or your secretary of the statement of James, Reverend James E. Tukes for identification, it may be helpful to see." Defendant's counsel then asked for the document which the plaintiff's counsel had refused earlier, and again the plaintiff's attorney refused. After the witness stated that he did not recall taking a statement from Reverend Tukes, the defendant's attorney gave his copy of the alleged report to the witness in order to refresh his memory. In an additional effort to refresh Officer Zuchowski's memory, the defendant's counsel, over plaintiff's objection, was allowed to read substantial portions of the report to the witness despite the fact that the officer could not recall any of the questions or answers contained in the alleged report. A part of his line of questioning proceeded as follows over plaintiff's objection that it constituted improper refreshing of the witness:

Q. All right. Do you recall having asked the witness [Reverend Tukes] this question: "Could this accident have been avoided?

Answer: If the boys did not run into the street." Recall asking this witness that question and receiving that answer?

A. No, I don't.

．　．　．　．　．　．

Q. "Is there anything else you would like to tell concerning this accident? The only thing I can truthfully say is that the driver was not responsible." Do you recall that question being asked and that answer being made?

A. No, I can't say that I do, no sir.

On cross-examination, Officer Zuchowski testified that he had seen the alleged statement used by defendant's

counsel in the office of the defendant's counsel before the trial.

At various points in this portion of the record, there are discussions in open court among counsel and the court concerning the plaintiff's objections to the reading of the report. At the end of Officer Zuchowski's testimony, the defendant's counsel again made a demand for the report which the plaintiff's counsel was using and the plaintiff again refused the demand. It should be noted that none of the proceedings described above were held in chambers, but rather they took place in open court in the presence of the jury.

■ At three places in the part of the record just summarized certain statements which were improper and prejudicial to the plaintiff were allowed to be introduced. The first improper statements received in evidence were those of Lieutenant Coyle to the effect that he had issued no summons to the defendant. The court did not, upon the plaintiff's specific objection, strike this testimony although the jury might have improperly inferred from it that, in the officer's opinion, the defendant was not at fault. Failure to do this was clearly error. This conclusion is fully supported by Giles v. Keunnen, 50 Ill App2d 389, 200 NE2d 143, in which the court reversed a judgment for the defendant, in part on the basis of the testimony of a police officer that he had not arrested the defendant. In holding such testimony to be improper and prejudicial the court said:

> Whether or not an arrest was made was wholly immaterial, and the inference was that the officer expressed an opinion on the ultimate question which the jury had to decide. (50 Ill App2d at 393)

■ Moreover, we believe that it was error to allow the defendant's counsel, in the attempted impeachment,

59

to read to the jury some of Reverend Tukes' prior statements expressing his belief that the defendant was not responsible for the plaintiff's injuries. Despite the fact that such statements were improper expressions of opinion on the ultimate issue in this case they were introduced in open court both on the cross-examination of Reverend Tukes and on the examination of one of the impeaching witnesses, Officer Zuchowski.

██ Our courts have held that admission of this kind of testimony is error. In order to preserve the independence of the jury, it has been held that a witness may not give his opinion on an ultimate issue in the case. Wawryszyn v. Illinois Cent. R. Co., 10 Ill App2d 394, 135 NE2d 154; Gillette v. Chicago, 396 Ill 619, 72 NE2d 326. An opinion that a party's conduct was negligent is clearly inadmissible under this rule. Rogers, Bacon & Co. v. Hart, 106 Ill App 393. We believe that the statements in the instant case, that the defendant was not responsible, are as much conclusion on the ultimate issue of the case as are statements that a party is not negligent.

██ These rules apply to the admissibility of prior statements in an attempted impeachment. It is error to admit statements of opinion on the ultimate issue in a case whether they are introduced on cross-examination of the impeached witness (Central R. Co. v. Allmon, 147 Ill 471, 35 NE 725) or whether they are introduced on examination of the impeaching witness (Northern Milling Co. v. Mackey, 99 Ill App 57, affd 210 Ill 115, 71 NE 448).

██ The defendant argues that any conclusions which might have come out on impeachment were not prejudicial and that, in any event, the plaintiff failed to preserve for appeal any alleged errors relating to any such conclusions. We cannot agree. We believe that admission of these conclusions was clearly preju-

dicial to the plaintiff because Reverend Tukes was a principal eyewitness for the plaintiff. Moreover, we believe that we should consider the errors even though at trial the plaintiff failed to object or, where he objected, failed to specifically state the grounds on which he now appeals. The plaintiff is a minor and hence a ward of the court, whose duty it is to see that his rights are properly protected. This duty requires courts to take notice of any legitimate and substantial errors whether or not they are objected to at trial. McReynolds v. Miller, 372 Ill 151, 22 NE2d 951; Giles v. Keunnen, 50 Ill App2d 389, 200 NE2d 143.

 We also believe that it was improper and prejudicial to allow the defendant's counsel to read from the alleged police report many of Reverend Tukes' statements which he denied making and which the defendant's counsel knew could not be recalled by the impeaching witness, Officer Zuchowski, whom he interrogated prior to trial. Police reports clearly are not admissible as evidence on the issues in the case. Professor McCormick, in his work on evidence, states the majority position as follows:

> . . . when the report, such as a police report upon an accident . . . , is based partly on observation, and partly on statements of others, and draws conclusions as to cause or fault, the majority of courts seem currently to exclude the conclusions, as "hearsay," or "opinion on the issue" or on grounds of want of first hand knowledge or of expert qualifications. [Citing cases.] (McCormick, Evidence, 617 (1954))

Our courts have adopted this position. In Paliokaitis v. Checker Taxi Co., 324 Ill App 21, 57 NE2d 216, this court held that police reports are inadmissible in evidence. In so holding the court noted the following defects which bar admission of such reports.

[The police reports] were made out about one and one half hours after the occurrence. All the officers knew about the occurrence was what they learned when they arrived on the scene. Their statements necessarily contained their conclusions as to how the accident occurred. (324 Ill App at 26)

 However, police reports are admissible for the limited purpose of impeachment. When impeachment is by the use of inconsistent statements, it is necessary not only to lay the necessary foundation by cross-examining the witness to be impeached, but also to prove by the testimony of an impeaching witness the nature of the alleged statements and the fact that they were made. With the respect to the second of these requirements, it is clear that counsel should know, before calling a witness, what he will testify to and that an impeaching witness should not be called to testify unless counsel knows that his testimony will be impeaching. Bejnarowicz v. Bakos, 332 Ill App 151, 74 NE2d 614. It is reversible error to permit exhibition to a jury of allegedly impeaching documents for the purpose of impeachment where the documents are incompetent because they are not in fact impeaching. Paliokaitis v. Checker Taxi Co., 324 Ill App 21, 57 NE2d 216.

Under the circumstances in the instant case, we believe that the attempted impeachment was clearly error. We believe that the defendant's counsel must have known before trial that the statements in the police report were incompetent for the purpose of impeachment because the impeaching witness could not testify that they had been made and that, therefore, the impeachment could not succeed. The record shows that when the impeaching witness, Officer Zuchowski, was in the office of the defendant's counsel before trial,

he was shown the alleged statement. In addition the record shows that, at the trial, the defendant's counsel did not claim surprise when Officer Zuchowski testified that he had no recollection of Reverend Tukes' alleged statements. Under these circumstances, it appears that prejudicial statements were improperly put before the jury under the guise of an attempted impeachment. Not only was the incompetent statement exhibited to the jury, an action which alone required reversal in the Paliokaitis case, but, in addition, the court allowed the defendant's counsel, over plaintiff's repeated objections, to read the prejudicial material from the incompetent statement.

 Finally, we believe that it was error for the trial court to permit argument and discussion concerning the alleged police report to be carried on by counsel in the presence of the jury. We believe that justice requires that a trial be more than a contest and that the trial judge do more than act as a mere umpire. United States Supreme Court Justice William J. Brennan, Jr. has recently put the point in these terms:

> Today we do seem to be coming closer to the ideal that the trial judge should not be a mere umpire of the dispute between contending lawyers and litigants but the active agent of justice guiding the trial and the protagonists so that right and justice may truly prevail. (Brennan, The Citizens' Responsibility, 48 J Amer Jud Sec 145, at 149)

As "the active agent of justice," the trial judge should scrupulously keep from the jury any argument or discussion by counsel concerning police reports. Such matters are best attended to in chambers and if improper and prejudicial references to such reports have been made by counsel before a jury, as was done here, it is better to declare a mistrial.

■■■■■■■■■■■■■■■■

The judgment will be reversed and the cause remanded for a new trial.

Reversed and remanded.

MURPHY and KLUCZYNSKI, JJ., concur.