JOAN GASZAK, Plaintiff-Appellee, Cross-Appellant, *v.* ZAYRE OF ILLINOIS, INC., *et al.*, Defendants-Appellants, Cross-Appellees.

(No. 56170;

First District (2nd Division)—November 27, 1973.

Jerome M. Brooks and Gilbert Gordon, both of Chicago, for appellants.

Philip E. Howard, of Chicago (William J. Harte and Kevin M. Forde, of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

On November 19, 1963 at about 10:00 P.M., Joan Gaszak, plaintiff, was shopping at the Bridgeview, Illinois store of defendant Zayre of Bridgeview, Inc., an Illinois corporation (hereinafter Zayre). While in the store, an encounter took place (referred to later in this opinion) with Joseph [*sic* Ralph] Barnes (hereinafter Barnes), the store manager, and Carlo C. Spranzo (hereinafter Spranzo), a store security guard. As the result of this encounter, plaintiff filed a three-count complaint charging false arrest, assault and battery, and malicious prosecution. After answers,

asserting denials, were filed, plaintiff filed two amended complaints, the last abandoning the assault and battery count.

The case was tried by a jury. At the conclusion of all the evidence, the trial court dismissed all defendants as to the false arrest charge and defendant Barnes as to the malicious prosecution charge. The jury returned a verdict in favor of the plaintiff as to the malicious prosecution charge against Zayre and Spranzo, and assessed plaintiff's damages in the sum of $10,500.

Zayre and Spranzo now appeal from the judgment entered on the jury's verdict, and plaintiff has filed a cross-appeal from the trial court's order that directed a verdict in the defendants' favor on the false arrest count.

On appeal Zayre and Spranzo urge that (i) the jury's finding that there was no probable cause for Spranzo swearing out a complaint against plaintiff was against the manifest weight of the evidence; (ii) the trial court erred in giving and refusing certain instructions to the jury; and (iii) the damages awarded to plaintiff were excessive. Plaintiff's cross-appeal challenges the trial court's directing a verdict in favor of defendants on the false arrest count.

The following is a summary of the testimony relevant to the issues presented in these appeals.

Spranzo, called by the plaintiff as an adverse witness, testified that he was employed by Zayre as an undercover agent to prevent employee shoplifting and had no credentials from any police or governmental agency; that he saw plaintiff on November 19, 1963 at approximately 10:00 P.M. when she was attempting to leave the store through the north door, whereupon he asked her to use the west exit since the north exit was locked; that plaintiff, instead of proceeding to the west exit, turned east, reentered the store through one of the vacant check out aisles, walked past the east end of the counters in a southerly direction until she reached the middlemost check out aisle, where she took some articles from under her coat and placed them on the display counter in front of the cash register. At this point plaintiff was directly east of the point where the witness was standing. Spranzo identified the articles as baby apparel. He further testified that plaintiff then continued walking in a southerly direction to the last check out counter where she stood behind three or four customers, waited her turn, and made a purchase; that he then approached plaintiff just as she was leaving the check out aisle and stated that the manager would like to see her in his office if she didn't mind; that plaintiff said "Okay" and Spranzo escorted plaintiff in a "gentlemanly fashion," by placing his hand beneath her forearm, to defendant Barnes' office; that he had no other conversation with plaintiff before entering the manager's office.

Spranzo then testified that he could not recall all that was said in defendant Barnes' office, but did remember asking plaintiff if she had "ever done anything like this before" intending to find out whether she had ever stolen anything; that plaintiff replied, in essence, that she did not know what he was talking about and began to cry. Spranzo then mentioned that, if necessary, he would get a police matron, whereupon plaintiff opened her coat in such fashion that the buttons popped off; that plaintiff refused to tell the defendants her name but, instead, threw her wallet on the desk. Spranzo guessed that they were in defendant Barnes' office for approximately ten minutes and stated that the only other conversation was plaintiff's statement that her husband made $200 per week, she was a Catholic, and did not need to steal.

Spranzo further testified that, after plaintiff left the office, she began to yell "What kind of nuts are yous [sic] that are working here?" and continued to holler until she reached the exit door; that he did not hear the plaintiff use any profane or vulgar language that evening in the store.

Spranzo then stated that, while he stood in front of the store, plaintiff slowly drove her car past the store, blowing the horn for one-half minute or so, yelling vulgar words, and hollering out loud; that he subsequently went to the police station and filed a complaint for disorderly conduct against plaintiff based on her conduct inside the store as well as in the parking lot.

Barnes testified for the plaintiff as an adverse witness. His testimony was essentially the same as that of defendant Spranzo. The only substantial difference in Barnes' account of the incident occurred when he stated that, after plaintiff was told to use the west exit, she reentered the store and proceeded all the way down to the first or second check out aisle where she pulled out an article and placed it on the cashier's counter.

Plaintiff testified that, after visiting a laundromat, she intended to stop at a nearby drug store to obtain a prescription for a sick child. On the way she stopped at the nearby Zayre store and, while in the Zayre store, she picked up a pair of baby pants and went to the only check out line that remained open, and, as she waited in line, she realized that if she stayed in the Zayre store any longer, the drug store would close and she would be unable to have the prescription filled; that she then proceeded to the door, realized she still had the pants in her hand, placed them on a counter, and continued toward the north door; that a man called to her saying that that door was closed and instructed her to "go back out through the registers and go out the front door"; that she then picked up the baby pants, proceeded to the check out counter and

paid for the item; that, as she was leaving, Spranzo grabbed her saying he had some questions to ask her, whereupon holding her like she had handcuffs on, Spranzo escorted her to the office; that a discussion followed between herself, Spranzo, and Barnes; that Barnes searched her coat; that she opened her suit jacket to show she was concealing nothing, and after about one-half hour she was allowed to leave.

Plaintiff further testified she was crying and upset as she left the store, proceeded to her car in the parking lot and, as she was driving past the front of the store, saw Spranzo standing outside, whereupon she blew her automobile horn for about three seconds; that she did not holler or use vile language; that as she was leaving the parking lot the police stopped her and after a brief discussion, a policeman offered to drive her home which offer she declined.

On the following Saturday at her home, a policeman of the Village of Bridgeview arrested her for disorderly conduct. Bond was posted and later the case was transferred from Bridgeview to Lyons. Plaintiff testified she appeared in the Village of Lyons court three times and upon the failure of Spranzo to appear, the case was dismissed.

According to plaintiff, after her arrest, she detected a change in the attitude of the neighbors toward her and the children. A neighbor testified that after the police car was at plaintiff's house the reaction of the neighborhood was to treat the plaintiff coldly and stay away.

Rebecca Livigni, an employee of Zayre's, testified that on the night in question, at about 10:00, she had heard a woman yelling in the manager's office; that after plaintiff left the store, for about ten seconds she heard a car horn blowing and the horn stopped when a squad car pulled up next to plaintiff's car.

Edward Vopelak, a police officer for the Village of Bridgeview, testified he was in a car with the police chief, heard the horn, stopped plaintiff who was upset and crying, that they talked to her about five to eight minutes before she drove off; that Spranzo then told the police he stopped plaintiff because he thought she was a shoplifter but found nothing; that Spranzo was disturbed about the horn blowing and wanted to sign a complaint against her, and that Spranzo proceeded to the police station and did sign a complaint. The witness further testified that the police did not file any charges against the lady.

The complaint, sworn to by Spranzo, which was the basis for the arrest of plaintiff, was for the alleged offense of disorderly conduct. Spranzo testified that Barnes was with him at the Bridgeview police station when the complaint was signed. On the other hand, Barnes testified he did not go to the police station.

## I.

Plaintiff, in count one of its amended complaint, alleged that the defendant Zayre by and through its employees and agents Spranzo and Barnes in a wilful and wanton manner, falsely arrested her for shoplifting, which action caused pain, suffering, injury to her reputation, humiliation and other alleged wrongs. Defendants denied the allegations.

At the close of all the evidence presented in the case, the trial court directed a verdict in favor of each defendant on plaintiff's cause of action for false arrest and plaintiff now contends that to do so constituted error.

■■ The trial court's decision was premised on section 10—3(c) of chapter 38 which provides as follows:

> "Any merchant, his agent or employee, who has probable cause to believe that a person has wrongfully taken or has actual possession of and is about to wrongfully take merchandise from a mercantile establishment, may detain such person in a reasonable manner and for a reasonable length of time for the purpose of investigating the ownership of such merchandise. Such reasonable detention shall not constitute an arrest nor an unlawful restraint nor shall it render the merchant, his agent or employee liable to the person detained." Ill. Rev. Stat. 1971, ch. 38, par. 10—3(c).

While, no doubt, the applicability of this statute should be a consideration in a situation such as the instant case, we believe the trial court here failed to correctly interpret its terms.

The trial court's analysis of section 10—3(c) is set out in the following comments made to the respective counsel:

> "So really, the only question, I think, is whether Mr. Spranzo and Mr. Barnes had reasonable grounds to believe that she had taken something improperly from the store and probably even had it on her person.
>
> I don't think it makes any difference whether she had it on her person if they had reasonable grounds to believe she had taken it and then put it back.
>
> So, let me take a look at that statute again.
>
> Yes, the statute does not require to have any possession of it [sic] * * *."

Were this court to accept such an interpretation of the statute, it would effectively give merchants a license to detain any customer who merely takes a piece of merchandise from one display counter and, deciding not to purchase it, places it on another. Clearly, this result is unreasonable in this age of mammoth self-service stores. Rather the statute must be strictly interpreted according to the plain meaning of its terms, to wit:

a merchant may detain a customer only when he has probable cause to believe that the person "has wrongfully taken or has actual possession of and is about to wrongfully take merchandise."

■■ A review of the testimony of defendants Spranzo and Barnes and the plaintiff reveals a substantial disparity between their respective accounts of the incidents giving rise to plaintiff's alleged causes of action. The test adopted by our supreme court for determining when the facts and circumstances are appropriate for taking a case from the jury's consideration was announced in *Pedrick v. Peoria and Eastern R.R. Co.* (1967), 37 Ill.2d 494, 510, 229 N.E.2d 504, to wit:

> "In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

Viewing the instant case in the light of the *Pedrick* standard, it is difficult, if not impossible, to see how all the testimony viewed in its aspect most favorable to the plaintiff could overwhelmingly favor the defendants on the issue of the plaintiff's wrongful detention. The defendants infer that the plaintiff's testimony is entitled to less credibility because it was "colored" by her interpretation. This accusation could also be leveled at any litigant, including the defendants. In order to preserve the vitality of our judicial system though, it is important that the court and jury rely upon the integrity of a witness' oath in the absence of any proof of perjury.

The trial court's error also lies in its failure to submit the question of probable cause to the jury. Defendants maintain that the trial court properly directed a verdict since, under section 10—3(c), whether or not they had probable cause to detain the plaintiff was a question of law to be determined by the court. Defendants cite as authority for their position a number of opinions from other jurisdictions having similar statutes where the lower court's grant of a directed verdict or summary judgment was affirmed on appeal (*King v. Andersen* (1966), 242 Cal. App.2d 606, 51 Cal. Rptr. 561; *Shaw v. May Department Stores Co.* (D.C. Ct. App. 1970), 268 A.2d 607; *Bruce v. Meijers Supermarkets, Inc.* (1971), 34 Mich. App. 352, 191 N.W.2d 132; *Cooke v. J. J. Newberry & Co.* (1967), 96 N.J. Super. 9, 232 A.2d 425; *Jacques v. Sears, Roebuck & Co.* (1972), 30 N.Y.2d 466, 334 N.Y.S.2d 285 N.E.2d 871, 632; *Delp v. Zapp's Drug & Variety Stores*, 238 Ore. 538, 395 P.2d 137). Clearly, however, these opinions cannot operate as authority to control the determination of the instant case since, in all but one of the cases cited, there was no dispute as to the operative facts. In each situation the store detective

testified that he saw the plaintiff take merchandise and pass through the check out counter without paying for it and, in all but one case, the plaintiff admitted having possession of goods he did not pay for. In the present case the plaintiff's account of the incident differed markedly from that of the defendants.

■■ In the instant case neither defendant Barnes nor defendant Spranzo actually saw the plaintiff pick up an article and leave the store without paying for it; in fact, as between themselves, their testimony differed regarding when she placed the object she had in her hand on the check out counter before starting to leave the store. The plaintiff's account of the incident was markedly different from that of the defendants and, presented with this situation, the trial court should have allowed the jury, after proper instructions, to determine which witness' testimony they believed rather than directing a verdict in defendants' favor. In our opinion, the trial court was in error in granting the motion for directed verdict to defendants Zayre, Spranzo and Barnes.

■■ While the existence of probable cause in a given situation is a question of law to be determined by the court, still, when there is a dispute as to the operative facts of the situation, the court cannot decide the question of probable cause and direct a verdict without usurping the jury's function as the trier of fact. In effect the existence of probable cause in this instance has become a mixed question of fact and law. Pausing to consider this problem, the Supreme Court of Oregon proposed in *dicta* that the court perform its function of deciding the question of probable cause as a matter of law

> "* * * by instructing the jury that if it finds the facts to be so and so, then such facts do, or do not, constitute reasonable cause; or, the court concludes that, accepting the disputed facts in the light most favorable to the plaintiff, such facts support only one conclusion,—the defendant had reasonable cause to believe the plaintiff had committed shoplifting." *Delp v. Zapp's Drug & Variety Stores* (1964), 395 P.2d 137, 139.

We, thus, conclude that the trial court, faced with a disputed factual situation, should have submitted the question of probable cause to the jury with appropriate instructions and that to direct a verdict for defendants on plaintiff's cause of action for false arrest constituted error.

## II.

Defendants Zayre and Spranzo first contend, on their appeal, that the jury's finding that there was no probable cause for Spranzo swearing out a complaint against plaintiff was against the manifest weight of the evidence.

Defendant Spranzo filed a complaint against the plaintiff for the

offense of disorderly conduct, the specific conduct complained of being the use of "profane and vulgar language." At trial defendant Spranzo testified that the plaintiff used vulgar language as she passed the store in her car; that he signed the complaint based on plaintiff's conduct in the store as well as in the parking lot. Plaintiff denied that she used any vulgar language while driving past the store; and Rebecca Livigni stated that she did not hear the plaintiff use any vulgar language that night. In answer to a special interrogatory, the jury stated there was no probable cause for filing the complaint for disorderly conduct. The defendants contend that the jury's finding was against the manifest weight of the evidence. On the contrary, the conflicting testimony clearly presented an issue of fact to be determined by the jury. The jury is in the superior position to determine the credibility of the witnesses and have weighed the testimony and made their finding. Since no opposite conclusion is clearly evident from the evidence, this court is bound by their decision. *Allen v. Yancy* (1965), 57 Ill.App.2d 50, 206 N.E.2d 452.

### III.

Zayre and Spranzo next claim error in the giving and refusing of certain jury instructions in connection with the malicious prosecution count. Defendants first contend that the court erred in refusing to submit to the jury their instruction number 15 defining probable cause, an element of plaintiff's *prima facie* case, to wit:

> "'Probable cause' is defined as a reasonable ground of suspicion, supported by circumstances sufficient to warrant an ordinary prudent person in believing the party charged is guilty of the offense."

■■ As stated in *Larson v. Commonwealth Edison Co.* (1965), 33 Ill.2d 316, 323, 211 N.E.2d 247, "It is well established that the meaning of words, used in their conventional sense, need not be defined or explained in giving instructions to the jury." The supreme court further stated in *Larson,* a scaffold act case, "The term 'having charge of' is one of common usage and understanding, and it is our opinion that further attempt at definition can only lead to confusion and error." In consideration of all the instructions given by the trial court, we believe the instruction on "probable cause" was unnecessary as it referred to a term of common usage and understanding. It should also be noted that the important term "reasonable doubt" is not the subject of an instruction in criminal cases. See Illinois Pattern Jury Instructions—Criminal, p. 14.

■■ The defendants also claim the trial court erred in submitting plaintiff's instructions five and six to the jury which read as follows:

> "Plaintiff's Instruction No. 5
> If you find that the defendants were guilty of wilful or wanton

conduct which proximately caused the wrongs claimed by the plaintiff, and if you believe that justice and the public good require it, you may, in addition to any damages which you find plaintiff entitled, award plaintiff an amount which will serve to punish the defendants and to deter others from the commission of like offenses.

"Plaintiff's Instruction No. 6

When I use the expression 'wilful and wanton conduct' I mean a course of action which shows actual or deliberate intention to harm or which, if not intentional, shows an utter indifference to or conscious disregard for the rights of others."

Defendants argue that these instructions, in addition to plaintiff's instruction seven defining malice overstressed to the jury an element necessary to maintain a cause of action for malicious prosecution and that such overemphasis is contrary to the spirit of the Illinois Pattern Jury Instructions.

These instructions, by their terms, related to the awarding of punitive damages and, as the trial court found in its order denying defendants' post-trial motions:

"Since the jury declined to award punitive damages, instructions involving wilful and wanton conduct are of no further significance."

Thus, if the jury did not award punitive damages, the logical conclusion is that they did not conclude the defendants were guilty of wilful and wanton conduct. Since the defendants were not prejudiced by the submission of these instructions to the jury, the question of the propriety of their submission is moot.

## IV.

Finally, Zayre and Spranzo contend the damages awarded to plaintiff were excessive. It is contended that the court erred in instructing the jury, as to the malicious prosecution count, to consider plaintiff's mental suffering and anxiety[1] in assessing damages.

■■ During the jury deliberations the foreman of the jury had delivered

---

[1] The instruction read:

"If you decide for the plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate her for any of the following elements of damage proved by the evidence to have resulted from the wrongful conduct of those defendants against whom you find:

1. Mental suffering and anxiety.
2. Injury to reputation.
3. Attorneys fees of $500.00

Whether any of these elements of damages has been proved by the evidence is for you to determine."

to the trial judge a handwritten note.[2] The trial judge responded by referring to the instructions given to the jury. Defendants now contend the note confirms the fact the jury considered, improperly, mental anxiety and suffering from "inside the store," and this resulted in an excessive verdict. We find the note from the jury foreman so vague, defendants' proposed construction is purely speculative.

The jury had before it evidence that plaintiff expended money for legal fees in the amount of $500.00; the facts concerning the incident outside Zayre's store, her arrest, the experience at the police station, evidence concerning the dismissal of the court action which had been initiated as the result of Spranzo's complaint, a neighbor's reaction to plaintiff's arrest.

The jury was instructed that, if they decided in favor of the plaintiff on the question of liability, then the elements of (1) mental suffering and anxiety, (2) injury to reputation and (3) attorneys fees of $500.00 were to be considered in determining the amount of money which would reasonably and fairly compensate plaintiff for defendants' wrongful conduct of malicious prosecution.

■■ The law is well established in Illinois that the amount of verdict is largely within the discretion of the jury. See *Lau v. West Towns Bus Co.* (1959), 16 Ill.2d 442, 158 N.E.2d 63. We have carefully reviewed the entire record. We believe there is ample evidence in the record not only to justify the verdict, but also to suggest that the jury acted within the court's instructions.

The judgment of the circuit court of Cook County as to the dismissal of all defendants on the false arrest charge is reversed and remanded for proceedings consistent with this opinion. The judgment as to plaintiff's damages in the amount of $10,500.00 against defendants Zayre and Spranzo is affirmed.

Reversed and remanded in part, affirmed in part.

LEIGHTON and HAYES, JJ., concur.

---

[2] The handwritten note said:
"1. In the judge's instructions to the jury, please clarify what we are to disregard. There were 3 charges originally, and two were dropped. What are the 2 charges dropped? After learning these, then, are we to disregard any evidence about incidents *inside* the store in regard to these two charges, or can this testimony be used in arriving at a decision regarding the only remaining charge about what happened *outside* the store?

2. Are we concerned only with the wording on the arrest warrant as the charge remaining?
/s/ Arthur Ganja
These questions will have to be answered on the basis of the instructions which you have.
/s/ Thomas R. McMillen
Judge"