ROBERT KORIS, Plaintiff-Appellee, *v.* THE NORFOLK AND WESTERN RAIL-
WAY COMPANY, Defendant-Appellant.

(No. 59670;

First District (1st Division)—June 2, 1975.

*Rehearings denied September 10, 1975.*

Lord, Bissell & Brook, of Chicago (Richard E. Mueller, Cornelius P. Callahan, and John J. Berwanger, of counsel), for appellant.

Arthur Aaron Ellis and Morris W. Ellis, both of Chicago (Ellis and Ellis, of counsel), for appellee.

Mr. JUSTICE EGAN delivered the opinion of the court:

The plaintiff, Robert Koris, sued his former employer, Norfolk and Western Railway Company, for false arrest and malicious prosecution. (The parties use the terms "false arrest" and "false imprisonment" interchangeably.) The jury returned a verdict for the plaintiff for $30,000 on each count and refused to award any punitive damages. The trial court entered judgment against the defendant in the total amount of $60,000.

Since the defendant's principal contention is that the trial court should have directed the verdict in its favor, a recitation of the testimony is required. The defendant's version is as follows: On March 10, 1968, Robert Beard and Martin Shemett, two of the defendant's special policemen, were assigned to stake out the defendant's yard near 79th and Kedzie in Chicago because of thefts of property from freight cars. They parked their car on a side street just north of the Southwest Highway and were looking south to the north edge of the yard about 50 yards from a flat car at track 37 which was loaded with eight pick-up trucks. The officers' car was positioned in such a way that they had an unobstructed view. The weather that night was exceptionally clear and the area was sufficiently lighted. At about 10:50 P.M. they observed the plaintiff and Robert Becker, both of whom the officers knew by sight, approach the rail car. They recognized them both with the naked eye and through binoculars that they were using. Becker climbed onto the rail car and removed batteries from four trucks and spare tires from two trucks. He placed the items on the bed of the rail car. The plaintiff took the batteries to the rear of the Continental Auto Rebuilders Building near the yard and Becker and he each took a tire to the building. During the entire time, the policemen remained sitting in the car.

After seeing the plaintiff and Becker walk back to the yard office, one of the policemen went to the Auto Rebuilders Building where he found the batteries and tires. They decided to wait for the men to return to pick up the merchandise. A few minutes later a pick-up truck drove up and the policemen approached to make an arrest. Becker ran behind the building toward the yard office and was apprehended. The pick-up truck

then drove past the other policeman at a high rate of speed and turned west on the Southwest Highway. The driver of the truck was never identified. The Chicago police were called and they took Becker into custody. The plaintiff appeared at the yard office at about 11:45 P.M. He said he had been out getting coffee and had a sack from the White Castle Restaurant at 79th and Pulaski. The plaintiff was not put under arrest at that time. The special policemen then left the yard and went to the police station to place charges against Becker. They returned to the yard at about 2 A.M. with their superior, Captain Balch, and two Chicago police detectives who arrested the plaintiff. The complaint was signed by Shemett. The plaintiff was tried before a jury in the Criminal Court of Cook County and found not guilty.

The plaintiff testified that he was a switchman and received his assignment from the yard master, Ralph Rawlins, at 10:45 P.M. He was in charge of a crew that included Becker, Doherty and Flynn. He completed his job at 11:15 P.M. and gave instructions to Becker and Doherty and told Flynn he was going for coffee. At no time was he ever near track 37. At 11:20 P.M. he left in his car to get coffee for the crew at the White Castle Restaurant at 79th and Pulaski. He returned in 10 minutes and went into the locker room with the coffee. He drank the coffee with other members of the crew and after a short time walked outside and was met by Beard, who asked him where he had been. The plaintiff told Beard he was in the office having coffee. Beard told him that Becker had been caught stealing. Beard made a telephone call and said: "We just got Mr. Becker, you know, stealing those items. Koris is working with him on the job. You think he could be involved?" The plaintiff asked the officer what he meant but received no response. The plaintiff went back to work until 2 A.M. when he was arrested. When questioned about the theft, he denied it.

The plaintiff testified further that the railroad was unhappy with him. He had been a yard master for 6 months but was demoted back to switchman. He had made several complaints about safety practices. If he made any small infraction of the rules, he would be investigated.

The defendant has cited a number of cases which set forth what must be proved in false imprisonment and malicious prosecution cases. But we believe the defendant misconstrues the legal theory upon which the plaintiff proceeded and upon which the jury could have based its verdict. The defendant's argument is based on the supposition that Beard and Shemett testified truthfully. The plaintiff argued in the trial court and in this court that they knowingly testified falsely. In oral argument the defendant conceded, as we believe it must, that if the

jury concluded that Beard and Shemett knowingly falsely identified the plaintiff that the verdict should not have been directed in the railroad's favor.

The jury heard the plaintiff's testimony that he was not near track 37 and that he left to get coffee after instructing Becker and Doherty and speaking to Flynn. The present occupation or whereabouts of Doherty and Flynn was not explained; and none of the three men was called to rebut the plaintiff's testimony. Beard testified that it was an exceptionally clear night; the plaintiff introduced a certified Weather Bureau report that on March 10, 1968, from sunrise to sunset the entire area was cloudy. Beard and Shemett testified to favorable lighting conditions; the plaintiff testified that track 37 at the location of the theft was not illuminated. The plaintiff testified that he had made numerous complaints about safety practices; the witness called by the defendant, Charles Glass, testified that he could not remember any complaints from the plaintiff. The evidence is not clear as to the distance that Shemett's car was from the scene of the theft, but the jury could have concluded from the testimony of one of the policemen that the car was over one-half block away.

■■ The jury heard that Beard called Captain Balch and, according to the plaintiff's testimony, said: "We just got Mr. Becker, you know, stealing those items. Koris is working with him on the job. You think he could be involved?" Beard did not specifically rebut that testimony of Koris. His version of his statement on the telephone was: "I told him [Captain Balch] basically what took place and asked him at that time if I should place Koris under arrest." After Balch arrived at the railroad yard, Becker was arrested and taken to the police station, but the plaintiff was not. It was not until 2 hours later, after Balch and the two officers had an opportunity to confer, that the plaintiff was arrested. The jury heard that evidence plus the fact that the plaintiff had been demoted and had made complaints. It was for the jury to pass on the credibility of the witnesses, to weigh the evidence and to draw all reasonable inferences therefrom; and a reviewing court may not substitute its judgment simply because it would have been different. We judge, therefore, that the jury could have concluded from all the evidence that the special agents of the railroad were not able to identify the man with Becker and decided to have Koris arrested and prosecuted and to testify falsely against him. The trial court properly refused to direct the verdict in favor of the defendant and properly denied its motion for judgment n.o.v.

■■ The plaintiff had asserted in paragraph nine of the complaint

that he had been "summarily dismissed as a result of the false arrest." On direct examination the plaintiff never testified that he had been discharged but did testify to what his salary as a switchman would have been if he was still working. On cross-examination the defendant referred to its interrogatory asking for the names and addresses of persons having knowledge of the facts as alleged in paragraph nine, to which the plaintiff had answered that he did not have the names of any witnesses to the occurrence. The defendant offered to prove that the plaintiff had a hearing of which he had notice before the district superintendent four days after his arrest; that the plaintiff was represented by the chairman of the union; that Beard, Shemett and Balch were present, among others; that the plaintiff received a report of the proceedings which was marked as an exhibit in the offer of proof; that he received a letter of discharge; and that he did not file an appeal. It argued in the trial court, and continues to do so in this court, that this proof would show the plaintiff was not summarily discharged. (We judge from its argument in the trial court that it was trying to show that the answer to the interrogatory was false because Beard, Shemett, Balch and others were present at the hearing and consequently were eyewitnesses to the "occurrence" as referred to in the interrogatory.)

Such proof would have diverted the jury from the principal issues in the case and would have been of no probative value. To illustrate, the defendant wanted to show that the chairman of the union represented the plaintiff at the hearing; the plaintiff wanted to show that the union representative was not a lawyer and did not make objections nor ask questions and that the witnesses were not sworn. The defendant wanted to show that the plaintiff had the right to appeal and failed to do so "because he was guilty"; the plaintiff wanted to show that he had instructed the union representative to appeal; the defendant wanted to prove in rebuttal that the plaintiff had not so instructed the union representative. These are but some examples that show that the nature and extent of the hearing itself would have been on trial. And what would the evidence in substance have shown? Simply that representatives of the defendant sat in judgment of the plaintiff after he had been criminally charged and adjudged the plaintiff guilty after hearing Beard and Shemett testify. If the jurors did not believe Beard and Shemett, and apparently they did not, they would regard the hearing as so much mummery. At the time the offer of proof was made the jury had heard no direct testimony that the plaintiff had been fired. But even so, no juror would reasonably expect the defendant to retain the plaintiff as an employee after what transpired on the evening of March 10. Con-

sequently, evidence of the hearing would have proved nothing of assistance to the jury and would have opened an evidentiary door that would require an Herculean judicial effort to close.

In the case cited by the defendant, *Seelig v. Harvard Cooperative Society* (1969), 355 Mass. 532, 246 N.E.2d 642, the plaintiff recovered against his employer on a malicious prosecution complaint and introduced evidence that his discharge was the result of ill-feelings between him and the assistant general manager. The Supreme Court of Massachusetts reversed the trial court's refusal to allow the defendant to show the reason for the plaintiff's discharge or his previous employment record. *Seelig* is not applicable here. In this case, at one point the defendant argued that the plaintiff could have been fired for violation of certain rules, such as failure to supervise other employees or leaving railroad property during working hours without permission. No such rules were ever submitted in the trial court. Significantly, the offer of proof did not include evidence that those charges were made against the plaintiff and that those were included in the reasons for his discharge. We believe the trial court's ruling was correct.

The plaintiff testified that he was making $620 per month for the Board of Education but would be making $1125 per month if he were still working as a switchman. Later, on the second redirect examination, he testified that he applied to the "Belt Railroad" and the "C. & O. Railroad" for a job as a switchman. The representatives of those railroads asked him why he had left the Norfolk and Western with 7 years' seniority and he told them he was fired "for being arrested for theft."

■■ The court gave two instructions on behalf of the plaintiff. Instruction No. 4 was the damage instruction on false imprisonment and Instruction No. 5 was the damage instruction on malicious prosecution. Both instructions included as an element of damages "the value of earnings lost, and the present cash value of the earnings reasonably certain to be lost in the future." We believe the giving of these instructions was error since there was insufficient evidence to support a finding that he had not been hired by the other railroads because he had been arrested or prosecuted. A plaintiff suing for malicious prosecution may recover for loss of employment. (52 Am. Jur. 2d *Malicious Prosecution* § 101 (1970).) Like all other elements of damage, loss of other employment must be certain and proximately caused by the prosecution. (52 Am. Jur. 2d *Malicious Prosecution* § 96 (1970).) The burden is on the plaintiff to prove proximate cause by evidence and not by "speculation, guess or conjecture." (*Illinois Pattern Jury Instructions—Civil No. 1.01.*) The other two railroads could have had any number of reasons for not hiring the plaintiff. So we can only guess, speculate or conjecture that his

arrest was in fact the reason they did not hire him. See *Shelton v. Barry,* 328 Ill.App. 497, 506, 66 N.E.2d 697.

■■ The defendant also contends that the plaintiff was permitted to receive a double recovery for the same damage. The damages alleged in the false imprisonment and malicious prosecution instructions are identical. In addition to the value of earnings lost, previously noted, the plaintiff claimed damages for "humiliation and mental anguish and suffering."

We do not believe the two cases cited by the plaintiff support his position. In *Hughes v. New York Central System,* 20 Ill.App.2d 224, 155 N.E.2d 809, a railroad employee was arrested at 1 A.M. but was detained without justification by the railroad on its own property until 9:30 A.M. when he was taken to a police station. He was subsequently found not guilty and filed a complaint for false imprisonment and malicious prosecution. A general verdict was returned in favor of the plaintiff, but the trial court granted the defendant's motion for judgment notwithstanding the verdict. The appellate court affirmed the trial court's order on malicious prosecution on the ground that the original arrest and subsequent prosecution were justified by the evidence but reversed the order on false imprisonment, holding that, although the original arrest was proper, the detention for 8 hours was not. Significantly, in *Hughes,* the verdicts did not separate malicious prosecution and false imprisonment; and for that reason the appellate court held that the verdicts must be set aside and a new trial held on the issue of false imprisonment only. The case is not authority for the proposition that the same damages may be recovered in both false imprisonment and malicious prosecution counts and then totaled.

In *Gaszak v. Zayre of Illinois, Inc.,* 16 Ill.App.3d 50, 305 N.E.2d 704, the plaintiff and employees of the defendant store got into a dispute over whether the plaintiff had taken merchandise from a counter with the intent to steal it. She was not arrested and left the store while shouting at the store detective. He testified that later while he was standing in front of the store, the plaintiff passed, blowing her horn for one-half minute and yelling vulgar words. He subsequently went to the police station and filed a complaint for disorderly conduct against the plaintiff based on her conduct inside the store as well as in the parking lot. The case was subsequently dismissed. The plaintiff filed a complaint for false imprisonment and malicious prosecution. The trial court dismissed the false imprisonment charge at the close of the plaintiff's case, and the jury returned a verdict in favor of the plaintiff on the malicious prosecution charge. The defendant appealed and the plaintiff cross-appealed the dismissal of the false imprisonment charge. The appellate court affirmed

the judgment for malicious prosecution but reversed the order directing the verdict in favor of the defendant on the false imprisonment charge and remanded for a new trial on that count only. Since the false imprisonment charge never went to the jury, we are unable to determine what elements of damage the plaintiff would have advanced. Moreover, the point raised by the defendant here was not raised in *Gaszak*. We have examined the briefs of the parties in *Gaszak* and note that the defendant's brief argued only that there should be a distinction in the damage incurred inside the store from that outside the store. In any event, the appellate court did not pass on the question now before us.

The impropriety of the plaintiff's argument may be illustrated by the following hypothetical case: A is falsely imprisoned and charged with a criminal offense. He retains an attorney who secures his release from custody. The criminal charge is subsequently dismissed. The attorney's fees are $500 for services rendered in securing the plaintiff's release from custody and in the subsequent criminal proceedings. The plaintiff sues for $500 damages for false imprisonment and $500 for malicious prosecution. The jury returns a verdict for $500 on each count. Is the plaintiff entitled to a total of $1000? We think not. We judge, therefore, that the judgment resulted in a double recovery for the same damages and that it was error to grant judgment in the total of $60,000.

For these reasons the judgment order appealed from finding the defendant guilty of false imprisonment and malicious prosecution is affirmed. (*Panepinto v. Morrison Hotel, Inc.*, 71 Ill.App.2d 319, 218 N.E.2d 880; *Blankenship v. Staton* (Ky. App. 1961), 348 S.W.2d 925.) That portion of the judgment awarding damages in the sum of $60,000 is reversed and the cause is remanded for a new trial on the issue of compensatory damages only.

Judgment affirmed in part; reversed and remanded in part.

BURKE, P. J., and GOLDBERG, J., concur.