Loyd et al. *v.* Malone et al.

JAMES D. LOYD *et al.,* Appellants, *v.* WILLIAM L. MALONE *et al.,* Appellees.

APPEAL FROM HAMILTON.

An infant who is aggrieved by the decree of a court of chancery, may file an original bill for redress, and is not bound to proceed by way of rehearing or bill of review.

The commissioners appointed to set off a widow's dower, have no authority to make a partition of the land among the parties entitled thereto.

They must be sworn, and the statement of that fact and the oath they took, should accompany their report.

A report made by others than the commissioners appointed by the court, is void.

Applications by a guardian for the sale of his ward's real estate, must be made in the county where the ward resides, although the estate may lie in a different county, and should state affirmatively such residence.

It is the duty of the court to appoint a guardian *ad litem* to protect the interests of infant suitors.

An agreement between parties not to bid against one another at a public sale, will vitiate the sale.

A sale by a guardian of his ward's land will not be sustained, unless it is shown that it was necessary for the infant's education and support.

A guardian must follow the directions of the probate court; and if, on an order being made, he finds he has no funds in his hands, he may then, but not sooner, make application for the sale of his ward's land.

THIS case was tried before BEECHER, Judge. The facts are stated in the opinion.

R. S. NELSON, for Appellants.

ISHAM N. HAYNIE, for Appellees.

BREESE, J. The scope of the bill in this case, is, to impeach and set aside an order of the Circuit Court of Hamilton county, directing the partition and sale of certain lands, the property of the complainants, who are infants.

The bill charges that the application for the sale of the lands, and all the proceedings anterior thereto, by the guardian, were collusive and designed to injure the infants, and to deprive them of their inheritance, and that no necessity existed for converting their land into money for their support and education, and that the guardian was actuated, in procuring the order of sale and selling the land, by improper motives to injure them.

On the argument we had doubt, and much of it was directed to this point, if an original bill could be filed like this, attacking the order of partition and sale, and a decree had, to set it aside. We have examined the question fully, and are well

satisfied the bill can be maintained. In the case of *Richmond and Wife* v. *Tayleur*, 1 Peere Williams, 734, Lord Chancellor Macclesfield held, that where an infant conceives himself aggrieved by a decree, he is not under a necessity to stay till he becomes of age before he seeks redress, but may apply for that purpose as soon as he thinks fit; neither is he bound to proceed by way of rehearing or bill of review, but may impeach the former decree by an original bill, in which it will be enough for him to say the decree was obtained by fraud and collusion, or that no day was given him to show cause against it; and Mr. Cottingham, his Lordship's secretary, acquainted the court that Mr. Vernon, in case of an erroneous decree against an infant, used always to advise the bringing of an original bill to set it aside, but in such bill to allege specially the errors in the former decree.

To the same effect is the case of *Loyd* v. *Munsell*, 2 ib. 73, and *Sheldon* v. *Fortescue*, 3 ib. 110, although these cases allowed it on the ground of fraud. So in *Robinson* v. *Robinson*, 2 Vesey, 232, Lord Chancellor Hardwicke, on a bill of revivor by the present plaintiff to revive the former decree, and have the benefit thereof, said, they could not controvert the decree : that there have been cases of bills in nature of revivor, to carry on a former decree, when the court sometimes, though but seldom, have said, the defendant may dispute that decree, but never that the plaintiff might. The decree has determined the question, whether it was then debated or not : and the court was thereby bound, though *the plaintiff being an infant, was not.* The cause therefore stood over, with liberty to the plaintiff to bring an original bill, or take such method to bring his rights in question as he shall be advised.

So in Mitford's Pleadings, 113, it is said, where an improper decree has been made against an infant, without actual fraud, it ought to be impeached by original bill.

In New York (*Davone* v. *Fanning*, 4 Johnson's Ch. 199, and *Murray* v. *Murray*, 5 ib. 60,) and in Kentucky, (*Williams* v. *Fowler*, 2 J. J. Marshal, 405, and *Edmonson* v. *Moseby's Heirs*, 4 ib. 497,) the right to file an original bill, is placed on the ground of fraud in the original decree. So in Ohio, in the case of *Mossie* v. *Matthew's Ex'rs and Wallace*, 12 Ohio, 351.

We are inclined to go to the extent of the rulings of the English courts, and not confine the right to cases where fraud has intervened to obtain a decree against infants. The rule in *Richmond* v. *Tayleur*, 1 P. Williams, 734, and recognized by Mitford, is a just rule, and we cannot anticipate any evils in its application, in this State, to cases as they may arise. The

interests of infants are the peculiar care of courts, and if their rights have been outraged and disregarded by an unfaithful guardian, the courts should not be slow to apply a remedy.

The record in this case shows an application, under sec. 31, ch. 34, (Scates' Comp. 156), by William L. Malone, as guardian of the infant heirs at law of one Sebron Sneed, deceased, the oldest of whom was not more than ten years of age, to the Circuit Court of Hamilton county, at the October term, 1854, for the appointment of commissioners, to assign and set off to Sebra Sneed, now Sebra Loyd, one of the complainants, her dower in an eighty acre tract of land, of which her husband died seized. This was the sole object of the petition, and no defense being made, William C. Davis, W. L. Lasater and Chester Carpenter, were appointed commissioners, not only to set off the widow's dower, but to make partition of the land, which had not been prayed for.

At the May term, 1855, Chester Carpenter and one Joseph Upton, styling themselves commissioners, reported, that " they find the lands described in said petition for dower are not susceptible of partition without material injury to those interested in the same."

Upon the coming in of this report, the guardian, Malone, presented a petition to the court, representing that his wards were of tender years, and that he had applied the personal estate to their support and education, and prayed for an order to sell the land for their further support and education. Due notice of his intention to present this petition was given in a public newspaper printed in the county of Franklin.

Without proof of any kind whatever, the court granted the prayer of the petition, a sale ensued, and the infants were divested of their inheritance.

It may be well to observe here, that the land, thus sold, was the homestead of the deceased Sneed, and his family, a farm of eighty acres, well improved, and amply sufficient, from the rents, to yield a yearly income of one hundred dollars at least. The personal property of the deceased, with a sum contributed by the widow, paid the debts of the intestate.

The original bill attacking this decree, is framed on the advice of Mr. Vernon, as given in the case of 1 Peere Williams, before referred to, alleging specially the errors in the decree assigning dower, and ordering the sale of the land for the support and education of the infants.

The statute in relation to dower provides, in the 17th section, (Scates' Comp. 153), that " it shall be the duty of the heir at law or other person having the real estate of freehold or inheritance in any lands or estate of which the widow is entitled to

dower, to lay off and assign such dower as soon as practicable after the death of the husband of such widow."

If the heir, (by sec. 18), does not, within one month next after the death of the husband, assign and set over to the widow, to her satisfaction, her dower, then she may sue for and recover the same, by filing her petition in chancery (sec. 19) in the Circuit Court, against the heirs, and proceed as therein directed. By section 24, when the court adjudges that the widow shall recover dower, it shall be so entered of record, together with a description of the land out of which she is to be endowed; and the court shall thereupon appoint three commissioners, not related to the parties, and disinterested, each of whom shall take an oath fairly and impartially to allot and set off to the widow her dower out of the lands and tenements described in the order of the court for that purpose, if the same can be done consistent with the interests of the estate.

Section 25 requires them to set off the dower by metes and bounds, according to quality and quantity of all the lands described in the order of court, with this important proviso: "*Provided,* The widow shall have the homestead or dwelling house of the husband if she desire it." The commissioners are to make return in writing, under their hands and seals, to the court, which, if approved, shall vest in her a life estate in the lands set off to her.

By section 28, if the commissioners aforesaid shall report that the land is not susceptible of a division without great injury thereto, a jury shall be impanneled to inquire of the yearly value of the dower, and shall assess the same; and the court shall thereupon render a judgment that there be paid to such widow, as an allowance in lieu of dower, on a day therein named, the sum so assessed as the yearly value of her dower, and the like sum on the same day in every year thereafter during her natural life.

By the 31st section it is provided, that guardians of heirs of tender age "may also petition the court to have the widow's dower assigned, which shall be proceeded in, in the same manner as is prescribed in other cases."

It will be perceived that this act nowhere provides, on an application to set off the widow's dower, that a partition of the lands shall be made among the parties entitled. That is a matter for future consideration, to be allowed by the court on a proper application being made. All the commissioners have to do is, after being sworn in the manner prescribed, to go upon the land, and ascertain by examination if the dower can be set apart, consistent with the interests of the estate. If it can be, they mark it off by metes and bounds, giving to the widow the homestead or dwelling house, if she desires it. If it cannot

be set apart by metes and bounds, that fact must be reported to the court, on which a jury will be impanneled to inquire into the yearly value of the dower, which becomes a lien on the land during the life of the widow. In this way all the rights of the widow are protected and preserved. We do not desire to be understood as determining whether dower thus assigned, frees the homestead from any claim the widow or the infant heirs may have upon it, in virtue of the Homestead Act. That question is not presented by this record. In this case, it will be seen the commissioners appointed by the court did not make the report—one only reported, Mr. Carpenter, with one Upton, a stranger to the record. Nor does it appear they were sworn. That fact, with the oath they took, should accompany the report and be prefixed to it.

This report of the commissioners does not conform to the law, nor to the order of the court appointing them, nor is it made by the persons appointed commissioners, and should not have been received by the court. It is void on its face. But if the court deemed it sufficient, then the subsequent action of the court was plain. A jury should have been impanneled to inquire into the yearly value of the dower. Instead of that, the court at the same term entertained the petition of the guardian of the infants to sell the land for their support and education, without any regard whatever to the rights of the widow. A sale was ordered, without any recognition of the right of the widow to dower.

This order was erroneous for several reasons. In the first place, the residence of the infants is not stated. The tenth section of ch. 47, title Guardian and Ward, (Scates' Comp. 552,) provides, that applications for the sale of the real estate of a ward, shall be made in the county where the ward shall reside, although the estate may lie in a different county. Hence the necessity of stating affirmatively, that the wards resided in Hamilton county. An inference may be drawn from facts in the record, that they were then (in 1855) living with their mother in Jefferson county.

In the next place, no guardian *ad litem* was appointed to resist the application, or to take care of the interests of the wards. Neither they, nor their friends, had any other notice than that contained in a newspaper of limited circulation published in an adjoining county, and it was the bounden duty of the court to appoint such guardian for them. In the next place, no proof of any kind was furnished the court by the guardian, of a necessity to sell the land for the support and education of the wards, and no proof was made, or allegation even, that the guardian had appropriated the rents and profits of the farm

Loyd et al. *v.* Malone et al.

sought to be sold, for such purposes, and no proof made that the court of probate had made any order upon the guardian to superintend the education and nurture of the wards, as required by the ninth section of the above cited chapter. There is proof in the record going to show that the guardian had not expended a dollar in their support and education, and an absence of any necessity that he should do so, as they were supported by their step-father in his family, carefully nurtured and educated, equally as well as other children in their neighborhood. The court does not find in the decree ordering the sale, any fact to exist to justify the order. It seems to have been granted as a matter of course because it was applied for. Nor is there, as we have before said, any reservation of the right of dower of the widow, and from which she is effectually barred by the sale, if we cannot afford relief by setting aside these proceedings.

At the sale, Loyd, the step-father, and one of the complainants here, cautioned the bidders, and actually forbid the sale, declaring that those who bought would buy a law suit. There is proof, also, of an agreement between White, the purchaser, and John B. Sneed, who now owns a part of the land by deed from White, not to bid against each other at the sale.

Abel Loyd swears that "John B. Sneed, one of the defendants, said he wanted ten acres of the land, but he would not bid against White if White would let him have ten acres of the land at cost; he wanted that much, as it was close to him and had a well on it; if he could get that much he did not want to enthral himself for any more; he said Mr. White and him agreed to the proposition; the deed for the ten acres of land alluded to, from White, was acknowledged before me, then an acting justice of the peace."

Such an agreement as this should vitiate the sale. It is designed and calculated to stifle competition; it is a fraud upon the law, and against public policy, and would avoid a sale even at law, so that a deed executed in consequence of it would convey no title. *Smith* v. *Gemler*, 2 Devereux, 126; *Martin* v. *Raclett*, 5 Richardson, 541; *Piatt* v. *Oliver*, 1 McLean, 295; *Jones* v. *Cornell*, 3 Johns. Cases, 29; *Doolin* v. *Ward*, 6 Johns. 194; *Wilbur* v. *How*, 8 Johns. 444; *Bexwell* v. *Christie*, Cowper, 395; *Howard* v. *Castle*, 6 T. R. 642.

But we are not disposed to place this case upon this ground, but on the broader ground that no just and reasonable pretense was shown for the sale of this land; no necessity existed for so disposing of it. With careful management, it is shown to yield about one hundred dollars per annum in rent—a sum sufficient, with the mother's aid, to nurture and educate them for many years to come—the land all the time appreciating in value, and

it should have been retained for their support, only to be parted with from dire necessity. The guardian had no right under our statute, (sec. 9, title, " Guardian and Ward," ch. 47, Scates' Comp. 551,) of his own mere motion, to present his petition to the Circuit Court, for an order of sale for the purposes expressed in it. He is to act under the direction of the court of probate, in all matters relative to the education and nurture of his ward, and for that purpose may pay out such portions of the ward's money as that court may from time to time, by its order, direct. If, on order being made, he finds he has no funds, he then may make the application for a sale of their land. But in this case, there was no order by the court of probate, and all the facts show there was no sort of necessity of selling the infants out of house and home, on the pretense set up. Their parents were willing to, and did support and educate them, and the whole proceedings, from first to last, seem to be a contrivance to get this land for sinister purposes. We think there is strong ground shown for the interference of a court of chancery, on such facts as are here presented, and we think the Circuit Court should have granted the prayer of complainants' bill.

We are of opinion the decree ordering a sale of the land should be vacated, and the deed executed by the guardian to Wm. B. White, and the deed from said White to John B. Sneed, delivered up to be cancelled, and the complainants fully restored to all they have lost by these unjust proceedings, and that the defendants render an account of the rents and profits of said part of land, being the South half of the North-east 27, in Township 4 South, Range 7 East, from the time of said sale, deducting taxes and necessary improvements, if any have been made thereon, and that it be referred to the master in chancery of Hamilton county, to take an account of said rents and profits, taxes and necessary improvements, and report the same to the court. It is further ordered that the Circuit Court of Hamilton county do order and direct, that the complainants be restored to the possession of said tract of land.

*Decree reversed.*