EDWARD WILSON

*v.*

WILLIAM S. KELLOGG.

1. JUDICIAL SALES—*of the fairness required.* The greatest fairness is required of those entrusted by law to conduct judicial sales, and of those purchasing at such sales; and any agreement, contract or arrangement entered into, on the part of the bidders, calculated to prevent competition at the sale, being contrary to public policy and a fraud upon the law, will vitiate the sale. A court of equity will not allow a party to profit by a purchase obtained by fraudulent means.

2. SAME—*clear and satisfactory proof required to set aside.* A court of equity will not permit a judicial sale to be set aside without clear and satisfactory proof, especially after the lapse of several years, and where the purchaser has made valuable improvements, nor, in such a case, for slight or trivial causes.

3. Thus, where land was sold at an administrator's sale for its then value, and the purchaser redeemed the same from tax sales, and paid all taxes thereafter, and made valuable improvements, and the proof of an unlawful agreement, on the part of the purchaser, to prevent two persons from bidding, was of a suspicious character, and wholly denied by the purchaser in his testimony, and it did not appear that the purchaser's promise in fact prevented the bidders from bidding above the price paid: *Held,* that a decree setting aside the sale was not justifiable, and the same was reversed.

APPEAL from the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

Messrs. WILLIAMS, BURR & CAPEN, for the appellant.

Messrs. STEVENSON, EWING & KELLOGG, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by William S. Kellogg, in the circuit court of Tazewell county, against Edward Wilson. to set aside a sale of a certain quarter section of land, made by the administrator of the estate of Benjamin Kellogg, deceased, to Wilson, on the 21st day of November, 1861, on the ground of a fraudulent agreement entered into between Wilson and two other parties who attended the sale, by which competition in bidding at the sale was prevented.

The venue of the cause was changed to McLean county, where a trial was had upon the evidence taken, and a decree rendered setting aside the sale and requiring Wilson to account for rents.

The master in chancery, to whom the cause was referred to state an account, after taking the testimony, made a report to the court, by which Wilson was found indebted to Kellogg, on account of rents. in the sum of $1962.72.

Exceptions were filed to the report, but were overruled, and a decree rendered in favor of the complainant, against Wilson, for the full amount shown to be due by the report.

Wilson brings the record here by appeal, and insists that the proof does not warrant the decree setting aside the sale, and that the exceptions to the master's report were improperly overruled.

Appellee was a son and one of the heirs of Benjamin Kellogg, deceased, and the land in controversy, in 1858, under proceedings for partition, was set off to him.

On the 21st day of November, 1861, the administrator of the estate of Benjamin Kellogg, deceased, under a decree of court, sold the land at public sale to pay the debts of the deceased. At the sale, appellant bid off the land, which was then vacant and unimproved, for $880. This sale the bill seeks to impeach.

It is not claimed that the proceedings under which the sale was made were defective or irregular, or that there was any

misconduct on the part of the administrator, who made the sale. The bill is predicated solely upon the ground that appellant made a contract, on the day of the sale, with two parties who appeared for the purpose of bidding. to give them the sum of $50 in case they would not bid upon the land.

The evidence in regard to the value of the land at the time it was sold is quite voluminous. and while the witnesses, in their opinions; do not agree, yet it is manifest, from the whole evidence, that the land sold for near its true value, perhaps as nearly so as is usual in a forced sale of land to pay debts; so that if two bidders were prevented from bidding at the sale through the conduct of appellant, as claimed, no serious injury resulted.

But the question to be determined is, does the evidence establish such a case of fraud and collusion among the bidders at the sale of November 21, 1861, as will justify a court of equity to set aside the sale and declare the deed made by the administrator void, as was done by the decree of the circuit court?

The law may be regarded as well settled, that the greatest fairness is required by those entrusted by law to conduct judicial sales, and those who purchase at such sales; and any agreement, contract or arrangement entered into, on the part of the bidders, calculated to stifle competition at the sale, is contrary to public policy, a fraud upon the law, and would vitiate the sale. *Loyd* v. *Malone,* 23 Ill. 43.

A court of equity will not permit a party to profit by a purchase obtained by fraudulent means.

While, however, this is true, on the other hand a court of equity will not permit a judicial sale to be set aside without clear and satisfactory proof.

If judicial sales are liable to be set aside for slight or trivial causes, purchasers will be deterred from buying, and the result will be, when it becomes necessary to sell lands of deceased persons to pay debts, large and valuable estates will be liable to be squandered for the want of bidders, creditors

will not be paid, nor will the heirs reap the benefit of lands which descend to them encumbered with debts that they otherwise would were it understood that judicial sales are to be upheld and sustained unless clear and satisfactory proof is resorted to to impeach them.

The appellant, upon purchasing the land in question, in November, 1861, commenced improving it, and has continued the improvement from time to time, and, by his labor and money expended, has rendered the land valuable. At the time it was purchased, it had been sold for taxes. Appellant redeemed it from tax sales, and has paid the taxes accruing upon it since. In October, 1870, appellee filed his bill to set aside the sale.

The proof relied upon to sustain the allegations of the bill, on the controverted question, consists of the evidence of two witnesses, Myers and Kilby, who were at the time partners in business, and attended the sale at the court house in Pekin, for the purpose of bidding upon the land.

The substance of Myers' testimony is, that on the day the land was sold, and before the sale, he met appellant and one Puterbaugh near the court house, where the sale occurred; that an agreement was made by which he and Kilby agreed not to bid on the land, and appellant promised to pay them $50 in the event that he did not have to pay over $6 per acre for the land; that Puterbaugh heard the terms of the arrangement talked over, but was not present when the contract was concluded. The testimony of Kilby is, in substance, like that of Myers.

This sale was made at the door of the court house in Pekin, the county seat of Tazewell county. Other lands were sold by the administrator at the same time. A number of persons were present. Whether this agreement, if made, caused the land to sell for any less than it otherwise would, does not appear. It is true, these men say they attended for the purpose of bidding; but whether they would have bid or not, depended upon how low the land would sell.

It is possible, but by no means probable, that these men would, for an agreement on the part of appellant to pay them the paltry sum of $50, stand by and allow the land to be sold for much less than it was worth, and thus lose a valuable bargain.

There is, however, another singular feature in regard to this pretended agreement. It is not claimed that appellant ever paid the $50. The existence of the agreement was not communicated to the administrator, appellee, or any person interested in the estate or the land, but it seems to have been kept a profound secret until 1869; and upon appellant's refusal to pay, an attorney was consulted by Myers, and upon being informed that the $50 could not be collected by suit, but that if the agreement had been made, the sale could be set aside and the land sold again, Myers then, for the first time, communicates to appellee the existence of the unlawful transaction.

Had Myers and Kilby, within a reasonable time after the sale, communicated this pretended unlawful arrangement to the administrator or appellee, their history of the transaction would have been entitled to a greater degree of credit; but the fact that no mention is made of the matter for eight long years, and then the existence of the pretended unlawful arrangement having been made public after appellant refused payment, is calculated to cast suspicion upon the credibility of the story.

But independent of this, the appellant, in his evidence, expressly denies that he made any agreement whatever with Myers and Kilby, prior to the sale, to prevent them from bidding; that he never agreed to give them $50, or any other sum, if they would not bid on the land. In this he is corroborated by Puterbaugh, who testifies that he was with the parties before the sale, and was at the sale, and he has no recollection of any arrangement on the subject being made or talked over in his presence, and if it had been, he would have remembered it.

This testimony has an important bearing, from the fact that Myers and Kilby say, in their evidence, that while Puterbaugh was not present when the contract was consummated, yet he was with the parties when it was talked over and the proposition made.

This, then, leaves the vital question in doubt—two witnesses upon the one side and two upon the other.

Under such circumstances, and upon such proof, it would not be proper for a court of chancery to set aside a judicial sale of so many years' standing as this.

While the proof may preponderate slightly in favor of appellee, yet there is so much doubt and uncertainty in regard to the existence of an unlawful or fraudulent agreement to prevent competition in bidding at the sale, that we do not feel that justice or a sound administration of the law requires us to hold that the sale should be set aside.

The decree of the circuit court will, therefore, be reversed and the cause remanded.

*Decree reversed.*