LESLIE A. COGAN, a Disabled Person, by William F. Cogan *et al.*, her Guardians, Plaintiff-Appellant, v. KAL LEASING, INC., *et al.*, Defendants-Appellees.

Fourth District   No. 4—89—0138

Opinion filed October 19, 1989.—Rehearing denied November 29, 1989.

146

Robert D. Owen and Darrel F. Parish, both of Owen, Roberts, Parish, Castleman & Owen, Ltd., of Decatur, for appellant.

Cassidy & Mueller, of Peoria (David B. Mueller, of counsel), for appellees.

JUSTICE STEIGMANN delivered the opinion of the court:

This case involves claims for injuries sustained by plaintiff, Leslie A. Cogan, a disabled minor, in a collision between a school bus and an automobile in which plaintiff was a passenger. The accident occurred when the automobile made a sudden left turn into the path of the bus.

Plaintiff, acting through her parents as her guardians, filed suit as follows: count I against defendant KAL Leasing, Inc. (KAL), which purportedly owned the bus involved in the accident and employed its driver; count II against defendant Alice J. Henderson (Henderson), the driver of the bus, and KAL in its capacity as

Henderson's principal; and count III against defendant Sheller Globe Corporation (Sheller), manufacturer of the bus.

Prior to the accident, Henderson had complained of discomfort which she believed was due to her straining to reach the bus' gas pedal. She testified that her husband and one of the mechanics with the bus company had placed a block of wood on the gas pedal and fastened it with a clamp. She said this was done with the approval of the bus company's manager. Sometime before the day of the accident, Henderson discovered the block had been removed from the gas pedal. On the day of the accident, however, when Henderson reported for work, she discovered two wooden blocks had been attached to the gas pedal with tape. She did not know who had attached these blocks, but after carefully inspecting the blocks and the gas pedal for safety purposes, she drove the bus out of the garage and proceeded with her regular driving duties.

Later that day, the accident occurred in which plaintiff was seriously injured. Plaintiff's theory of the case is that the blocks on the gas pedal interfered with the use of the brake, accelerator, and other controls, and accordingly, were a proximate cause of the accident.

At the conclusion of the plaintiff's case, the trial court denied KAL's motion for directed verdict as to count I. However, the court granted an identical motion at the conclusion of all the evidence. The court's reason for directing the verdict was that plaintiff produced no evidence concerning KAL's ownership of the bus. At the conclusion of the trial, the jury returned a verdict in favor of the remaining defendants as to counts II and III.

The primary issues which plaintiff raises on appeal are as follows: (1) whether the trial court gave plaintiff the special protection which plaintiff claims the law guarantees to persons under legal disability (the *Muscarello* doctrine), and (2) whether the trial court erred when it allowed the directed verdict motion of defendant KAL.

I

THE *MUSCARELLO* DOCTRINE

Plaintiff was a 16-year-old high school student on the day this tragic accident occurred. She suffered devastating injuries which left her unable to walk or to communicate. The court appointed her parents as guardians of her person and her estate. Her parents, in turn, hired the attorney who brought this action on behalf of their daughter.

Before dealing with the other issues raised in this appeal, this

court must address the trial court's alleged violation of the *"Muscarello* doctrine." (See *Muscarello v. Peterson* (1960), 20 Ill. 2d 548, 170 N.E.2d 564.) Plaintiff argues that this doctrine, which was discussed extensively by the Illinois Supreme Court in *Muscarello*, stands for the proposition that a "court has a duty to see that the rights of an infant are adequately protected, and is bound to notice substantial irregularities even though objections are not properly presented." (*Muscarello*, 20 Ill. 2d at 555, 170 N.E.2d at 569.) Citing *Zimmerman v. Village of Skokie* (1988), 174 Ill. App. 3d 1001, 529 N.E.2d 599, plaintiff argues that where the trial court fails in its obligation to take action to protect the plaintiff, the appellate court must do so. Because this argument affects the standard of review to be employed when we consider the other issues raised by plaintiff, we must first decide whether either this court or the trial court is under some sort of special duty to protect this plaintiff under the circumstances of this case.

Plaintiff makes clear in her appellate brief how she thinks the *Muscarello* doctrine should have affected the trial court's handling of this case:

"This principle—going to the very heart of our legal system—was ignored by the trial court throughout the trial, even when it was specifically and uncategorically brought to the Court's attention. At no time did the court appear to consider the plaintiff's legal incompetence in making its rulings on matters before it. It is clear that the Court never intervened on its own volition to protect the plaintiff's rights from prejudicial matter injected by the defendants when plaintiff's counsel did not object."

While plaintiff correctly paraphrases language used in various decisions of courts of review of this State when discussing the *Muscarello* doctrine, we believe plaintiff has lifted that language out of its limiting context. As our discussion of the cases citing this doctrine will reveal, the doctrine has validity only in circumstances suggesting either fraud, violation of a fiduciary interest, or ineffective assistance of counsel.

The *Muscarello* doctrine first appeared in Illinois in *Loyd v. Malone* (1859), 23 Ill. 43. *Malone* involved allegations of fraud in the partition and sale of certain lands belonging to the infant plaintiffs. Noting among other flaws that no guardian *ad litem* was appointed to represent the interests of the plaintiffs, the court stated the following:

"The interests of infants are the peculiar care of courts, and if

their rights have been outraged and disregarded by an unfaithful guardian, the courts should not be slow to apply a remedy." *Malone*, 23 Ill. at 44-45.

The authority cited in *Malone* was a 1723 decision from England, *Richmond & (Wife) v. Tayleur* (K.B. Ch. 1723), 1 Peere Williams 734, 24 Eng. Rep. 591. *Richmond* similarly involved allegations of fraud.

In *Lloyd v. Kirkwood* (1884), 112 Ill. 329, 338, the court approvingly cited its earlier language from *Malone*: "The interests of infants are the peculiar care of the courts." Again, *Kirkwood* concerned allegations of fraud and a violation by the guardian *ad litem* of his fiduciary duty for his failure to take any part in the trial court proceedings to protect his ward.

In *Tymony v. Tymony* (1928), 331 Ill. 420, 163 N.E. 393, the only party defendant interested in the title to the property in controversy was four years old. The supreme court found the actions of the infant's guardian *ad litem* totally deficient in protecting the interest of the child and stated the following:

"Whenever the property rights of an infant are drawn into litigation and the infant himself, whether as plaintiff or defendant, has been brought into court, he at once becomes the ward of the court, and it is the duty of the court to see that his rights as such are properly protected. If the general guardian who undertakes the performance of this trust, or the guardian *ad litem*, fails to properly protect the interest of his ward, it is the duty of the court of its own motion to compel him to do so." *Tymony*, 331 Ill. at 426-27, 163 N.E. at 396.

*McReynolds v. Miller* (1939), 372 Ill. 151, 22 N.E.2d 951, concerned litigation involving certain real estate. The defendant, who was a juvenile, had a decree entered against him regarding the property. While the court again stated that courts are "bound to specially guard the interests of minors, and to notice legitimate and substantial objections whether raised by the guardian or not" (*McReynolds*, 372 Ill. at 153-54, 22 N.E.2d at 952), the court's actual holding was that the juvenile's "rights were obviously not properly safeguarded in the original suit" (*McReynolds*, 372 Ill. at 154, 22 N.E.2d at 952). The court noted that no evidence was introduced on the juvenile's behalf and much improper evidence was permitted into the record. Essentially, the court found that the juvenile was denied the effective assistance of counsel.

*Allen v. Yancy* (1965), 57 Ill. App. 2d 50, 206 N.E.2d 452, involved a personal injury claim arising from an automobile accident.

The court found the record replete with error and misconduct by defense counsel. Finding that the erroneously admitted evidence was clearly prejudicial to the plaintiff minor, the court held that it "should consider the errors even though at trial the plaintiff failed to object or, where he objected, failed to specifically state the grounds on which he now appeals." (*Allen*, 57 Ill. App. 2d at 61, 206 N.E.2d at 457.) The court then noted that because the plaintiff was a minor and hence a ward of the court, it was the court's duty to see that the minor's rights were properly protected and to take notice of any legitimate and substantial errors even if they were not objected to at trial. Again, the essential holding of this case was that the juvenile was denied the effective assistance of counsel.

In *Frederick v. Zeigler Coal Co.* (1978), 56 Ill. App. 3d 888, 891, 372 N.E.2d 730, 732, this court found itself "compelled to vacate and remand as to the distribution plan with respect to the award of attorneys' fees" in an appeal from an order of distribution settling a Structural Work Act (Ill. Rev. Stat. 1975, ch. 48, pars. 60 through 69) claim. The court was troubled by the behavior of the attorney ostensibly representing the best interests of the children of the deceased worker:

> "This case involves the interests of minor children, as well as serious questions with reference to conflicts of interest. In such posture we deem that this court has a duty to see that the rights of the children are adequately protected and we are bound to notice substantial irregularities, even though not necessarily expressly presented. See *Muscarello v. Peterson* (1960), 20 Ill. 2d 548, 170 N.E.2d 564." *Frederick*, 56 Ill. App. 3d at 892, 372 N.E.2d at 733.

In *Wilbon v. D.F. Bast Co.* (1977), 48 Ill. App. 3d 98, 365 N.E.2d 498, the sole issue considered on appeal was whether the minor children of a decedent are barred from asserting their rights due to the two-year statute of limitation. To avoid a result which would have deprived those children, aged five months and two years at the time of their father's death, of their cause of action, the court cited the *Muscarello* doctrine as a reason to liberally construe the statute of limitations in conjunction with the Wrongful Death Act (Ill. Rev. Stat. 1975, ch. 70, par. 2) in order to reach a decision permitting a wrongful death claim to be brought on their behalf. In so holding, the court stated the following: "Therefore, we conclude the intent of the legislature, the case law and the public policy of Illinois, require that we reverse the decision of the trial court and remand this case for trial on the merits for the benefit of the two minor children." (*Wilbon*, 48

Ill. App. 3d at 102, 365 N.E.2d at 501.) Critical to the court's assessment of this case was its obvious concern with the failure of the children's lawyer to bring a wrongful death action in a timely fashion.

The decision of the appellate court in *Wilbon* was affirmed by the Illinois Supreme Court, *Wilbon v. D.F. Bast Co.* (1978), 73 Ill. 2d 58, 382 N.E.2d 784; however, the supreme court did not mention the *Muscarello* doctrine.

In *Zimmerman* (174 Ill. App. 3d at 1004, 529 N.E.2d at 600), the plaintiff was the father of a mentally disabled person who was suffering from " 'atypical mixed organic disorder with psychosis.' " The son's mental condition was the result of his attempt to commit suicide by hanging in the defendant's jail. The father brought suit against the Village of Skokie, claiming that its negligence caused his son's condition. The son failed repeatedly to appear for scheduled depositions. Defendant filed a motion to dismiss plaintiff's complaint for failure to comply with discovery requests and court orders. Yet, plaintiff's counsel neither filed a response to the motion nor appeared at the hearing thereon. Defendant's motion was granted, and no appeal from that order was taken within 30 days. Subsequently, new counsel appeared on behalf of plaintiff and called to the court's attention for the first time the belief of the son's treating doctors that deposing the son would be injurious to his health. Because more than 30 days had passed from the time plaintiff's cause of action had been dismissed with prejudice, plaintiff had to seek relief pursuant to section 2–1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2–1401). Without citing the *Muscarello* doctrine by name, the appellate court reversed the trial court's denial of the petition for section 2–1401 relief, and in doing so, stated, "[T]he interests of a mentally disabled person are at stake here and we must consider whether equitable principles require us to vacate the order denying plaintiff's petition for section 2–1401 relief." (*Zimmerman,* 174 Ill. App. 3d at 1007, 529 N.E.2d at 602-03.) The court then added, citing *Brandon v. DeBusk* (1980), 85 Ill. App. 3d 645, 407 N.E.2d 193, "[M]inors [are] entitled to special protection by the courts, particularly to see that their rights [are] protected even from the neglect of their representatives in the interest of substantial justice." *Zimmerman,* 174 Ill. App. 3d at 1008, 529 N.E.2d at 603.

In *Muscarello* itself, the most recent decision by the Illinois Supreme Court that discussed this doctrine, defendant's insurance carrier engaged in such gross misconduct that the decision may be viewed as one finding fraud in the proceedings. The misconduct occurred when an insurance adjuster omitted two key paragraphs from

a letter he provided to the plaintiff's lawyer. These paragraphs were originally included in the letter by the physician who examined the plaintiff minor at defendant's request and were helpful to the plaintiff's position. While the supreme court did say that "a court has a duty to see that the rights of an infant are adequately protected, and is bound to notice substantial irregularities even though objections are not properly presented on its behalf" (*Muscarello*, 20 Ill. 2d at 555, 170 N.E.2d at 569), it also said the following *in the same paragraph*:

> "If a litigant or his representative engages in conduct so prejudicial and reprehensible that the other party cannot receive a fair trial and the judicial process stand without deterioration, this court will review and consider assignments of error even though no objection was made and no ruling made or preserved in the trial court." *Muscarello*, 20 Ill. 2d at 555, 170 N.E.2d at 569.

*Giles v. Keunnen* (1964), 50 Ill. App. 2d 389, 200 N.E.2d 143, also cited the *Muscarello* doctrine, but again, *Giles* involved a plaintiff of tender years. The court noted:

> "[D]efense counsel asked improper questions and pursued improper lines of inquiry with no objection from plaintiff's counsel or an objection not stated on a proper basis. Thus, the rights of the minor plaintiff were not protected, and the defense obtained improper and highly prejudicial testimony which was used very effectively in closing argument." *Giles*, 50 Ill. App. 2d at 391, 200 N.E.2d at 144.

We distill from the foregoing authority that the *Muscarello* doctrine has continuing validity only in circumstances suggesting either fraud, violation of a fiduciary interest, or ineffective assistance of counsel. *Muscarello* and *Kirkwood* both dealt with suggestions of fraud; *Malone, Richmond, Kirkwood,* and *Frederick* all dealt with suggestions of violations of fiduciary interests; and *Tymony, McReynolds, Allen, Giles,* and *Zimmerman* all dealt with suggestions of ineffective assistance of counsel.

The civil law of this State has long dealt with issues involving fraud and violations of fiduciary duties, but it has not had the occasion to determine what effective assistance of counsel means in a civil law context. Because the sixth amendment to the United States Constitution guarantees the effective assistance of counsel to all accuseds, the criminal law has been required to provide standards by which to determine whether the assistance of counsel has been effective. In *People v. Barnard* (1984), 104 Ill. 2d 218, 470 N.E.2d 1005,

the Illinois Supreme Court cited the then-recent decision of the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, and stated the following:

> "In [*Strickland*] the court held that the defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. It is not enough to show that counsel's errors had some conceivable effect on the outcome of the proceeding. On the other hand, the defendant need not show that counsel's deficient performance more likely than not altered the outcome of the case. To establish ineffective assistance of counsel the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Barnard*, 104 Ill. 2d at 237-38, 470 N.E.2d at 1012.

For purposes of the *Muscarello* doctrine, as we have now limited it, we adopt the language in *Barnard* and the further explanatory language in *Strickland* as the standards by which to gauge a claim of ineffective assistance of counsel in this civil law context.

We conclude that the *Muscarello* doctrine should be explicitly limited because its unlimited utilization is inconsistent with the rules of evidence and procedure normally applicable to a civil trial. One of the most fundamental rules of procedure is the obligation of the courts to provide neutral judges and juries. Accordingly, we should be very hesitant about permitting, much less requiring, a judge to abandon the judge's role of neutrality, no matter how worthy the goal.

Society has changed considerably since the early 19th century, and procedures are now available to ensure that the rights and interests of minors and incompetents are well protected. The best way for a court to fulfill its duty to protect these rights and interests is to appoint guardians for the minor or incompetent. The guardians, in turn, should hire competent counsel to vigorously protect or defend the minor's or incompetent's rights. In the present case, this is precisely what happened. Plaintiff's parents, as her guardians, hired one of the distinguished members of the Macon County Bar, Mr. Robert Owen, to pursue vigorously the interests of their daughter. Mr. Owen did just that at the trial level, and he continues to do so before this court.

Just as we should be careful about changing the role of the trial judge, so should we be careful about changing the rules of evidence and procedure. These rules have been developed and refined over

hundreds of years with the ultimate goal of providing a fair trial for all litigants, regardless of whether one of the litigants is a minor or an incompetent. According to Professor Michael Graham:

> "The purpose of rules of evidence—like rules of procedure—is the speedy and final resolution of controversies according to the substantive rights of the parties. [Citation.] Rules of evidence should be interpreted and applied to secure fairness in administration, to foster the ascertainment of truth, to prevent unfair prejudice, to eliminate unjustifiable expense and delay, and to protect all involved from harassment or undue embarrassment." (M. Graham, Cleary & Graham's Handbook of Illinois Evidence §102.1, at 3-4 (4th ed. 1984).)

We might also add that these rules are designed to ascertain the truth of whatever matter may be in controversy.

■■ Skewing the rules of evidence or procedure merely because one party to the litigation happens to be a minor or an incompetent loses sight of the purposes those rules are to fulfill. To be more specific, the defendants in this case, KAL Leasing and Alice Henderson, are no less entitled to a fair trial consistent with all applicable rules of procedure and evidence (designed to achieve that result) than they would be had the plaintiff not been rendered incompetent as a result of her injuries. From the point of view of the defendants in this litigation, the terrible injuries suffered by the plaintiff, however regrettable they may be, are chance occurrences. No one *intentionally* caused those injuries, nor is this cause of action dependent upon the severity of the injuries. This same cause of action could have been brought in precisely the same way had plaintiff's injuries been much less serious or permanent.

The plaintiff in this case was 16 years old at the time of the accident which rendered her a mental incompetent. Plaintiff's case can be compared to a hypothetical case in which an accident causes serious injuries under circumstances identical to those of the present case except (1) the injured plaintiff is 18 at the time of the accident, and (2) the accident causes quadriplegia instead of mental incompetence. A comparison of these two cases, one real and the other hypothetical, raises the following question: on what basis can a principled distinction be drawn between the normal application by a neutral judge of the rules of evidence and procedure in the case of the 18-year-old quadriplegic and the lesser application of those rules by a judge who is supposed to be looking out for the best interests of the 16-year-old mental incompetent? We do not believe a principled distinction between these two cases can be made.

Because in this case the record does not demonstrate any fraud, violation of a fiduciary interest, or ineffective assistance of counsel, we hold that neither the trial court nor this court should abandon our normal posture of neutrality to ensure that the rights of this mental incompetent are adequately protected, nor is either court bound to notice substantial irregularities even though objections are not properly presented on behalf of the plaintiff. In other words, the *Muscarello* doctrine has no application to this case.

## II

### THE DIRECTED VERDICT

■ Having dealt with the *Muscarello* doctrine, we now address whether the trial court erred when it allowed the directed verdict motion of defendant KAL as to count I. KAL was alleged in count I to be negligent for furnishing the school bus which plaintiff claims was in a dangerous condition because wooden blocks had been attached to the gas pedal. The circuit court granted the directed verdict on the grounds that plaintiff had not proved ownership. Plaintiff argues that because ownership was not at issue, plaintiff was not required to prove ownership of the bus. In the alternative, plaintiff claims that ownership of the bus was established both through admissions in the pleadings and through evidence at trial. We agree with plaintiff on these points. We find, however, that reversal is not warranted because the ultimate decision of the trial court was correct, even if for the wrong reasons. A decision will not be reversed solely because the court gave an incorrect or insufficient reason for its rendition. (*Waldron v. Waldron* (1973), 13 Ill. App. 3d 964, 301 N.E.2d 167.) We find that defendant KAL was entitled to the directed verdict because all of the evidence, when viewed in its aspect most favorable to plaintiff, so overwhelmingly favors KAL that no contrary jury verdict based on that evidence could ever stand. *Imig v. Beck* (1986), 115 Ill. 2d 18, 24, 503 N.E.2d 324, 330.

In the present case, the principal issue was whether the condition of the bus inhibited its driver from taking defensive action which could have prevented the collision or lessened its impact. The consensus of both plaintiff's and defendants' experts at trial was that, given the locations of the school bus and the automobile prior to the beginning of the automobile's turn, a collision was inevitable. At most, 1.3 seconds elapsed between the beginning of the turn and the collision, and at least 2.3 seconds would have been required for any form of responsive braking by the bus. Moreover, several eyewit-

nesses to the accident testified that the collision between the school bus and the automobile was inevitable. A motorist testified that he saw the automobile turn in front of the school bus "[i]nstantly *** like you would snap your fingers." The motorist further testified that he saw neither a turn signal nor brake lights and that at the point where the automobile crossed the center line, he knew a collision was inevitable.

A student passenger on the school bus testified that the turn and the collision were instantaneous. The student did not feel the bus slow down or brake, nor did the student hear the engine race. Henderson herself testified that she did not have time to warn the children to brace themselves for the impact. She also testified that the turn and the collision were almost instantaneous.

Plaintiff maintains, however, that because Henderson testified at a coroner's inquest that she applied the brake to keep from hitting the vehicle occupied by the plaintiff, the issue of causation should have gone to the jury. Plaintiff argues that the jury could have inferred that Henderson may have had sufficient time to stop the bus prior to the collision and that the wooden blocks on the gas pedal interfered with Henderson's efforts to press down the brake pedal.

██ In accordance with our authority to affirm a judgment on any basis appearing of record (*Cuthbert v. Stempin* (1979), 78 Ill. App. 3d 562, 567, 396 N.E.2d 1197, 1202), we find that the evidence demonstrates that the sole proximate cause of the accident was the abrupt left turn of the automobile occupied by plaintiff into the path of the oncoming bus. The circuit court's directed verdict is affirmed without consideration of the question of ownership.

### III

#### OTHER ISSUES

Plaintiff also asserts that other prejudicial errors were committed which denied plaintiff a fair trial. Plaintiff claims that (1) defendants KAL and Henderson were guilty of prejudicial misconduct in eliciting testimony about the familial status of Henderson as a mother and grandmother, (2) the court unduly restricted plaintiff's examination of Henderson and one of KAL's experts, and (3) the court should have allowed plaintiff leave to reopen her case to prove KAL owned the school bus.

First we consider whether KAL, in its direct examination of Henderson, was guilty of eliciting prejudicial testimony that Henderson was married and had three children and eight grandchildren.

Normally, evidence of the domestic affairs of the parties is inadmissible in personal injury cases. (*McCarthy v. Spring Valley Coal Co.* (1908), 232 Ill. 473, 83 N.E. 957; *Brayfield v. Johnson* (1965), 62 Ill. App. 2d 59, 210 N.E.2d 28.) However, none of the cases which plaintiff cites in support of this argument requires a conclusion that introduction of such evidence amounts to reversible error. In *McCarthy* and *Payne v. Noles* (1972), 5 Ill. App. 3d 433, 283 N.E.2d 329, evidence was introduced concerning the plaintiff's (not defendants') familial status, while in *Brayfield,* reference to the plaintiff's family was held not to be reversible error. In another case on which plaintiff relies, *Hedge v. Midwest Contractors Equipment Co.* (1964), 53 Ill. App. 2d 365, 202 N.E.2d 869, evidence of plaintiff's familial status was deemed relevant to plaintiff's claim for damages and was thus held to have been properly admitted. Finally, in *Falcon v. La Roche* (1954), 4 Ill. App. 2d 112, 123 N.E.2d 587 (abstract of opinion), evidence of defendant's familial status was held to be prejudicial error because the plaintiff was a fashion model while defendant was married and had a family.

■ In the instant case, the evidence of which plaintiff complains merely elaborates upon what the jury could already observe as Henderson testified, namely, that she was old enough to be a grandmother. Furthermore, plaintiff's counsel introduced *plaintiff's* familial status during closing argument:

> "I have never been in a straightjacket and I hope none of you ever [have] or ever will be, but that's the way I imagine Leslie Cogan feels. She can't move, and it must be a terrible feeling to be inside her body and not be able to say thank you to her mother for all that care she has given her over the years or when her dad says 'We love you,' to say 'I love you too.' "

Given that the objection made to this argument was overruled, it almost certainly neutralized any prejudicial effect which the introduction of Henderson's familial status had on the jury. Thus, we find any irregularity in the introduction of evidence concerning Henderson's familial status to be *de minimis*.

Next, we consider whether the circuit court unduly restricted plaintiff's examination of Henderson and one of KAL's experts, Professor Rudolph Mortimer. Plaintiff alleges that plaintiff's direct examination of Henderson during plaintiff's case in chief as an adverse witness under section 2—1102 (Ill. Rev. Stat. 1987, ch. 110, par. 2—1102) was unduly restricted when defense counsel objected to Henderson's being asked about her testimony at the coroner's inquest which preceded the trial. This objection, however, was made at

a side-bar conference which was not transcribed. The record contains no further reference to the court's ruling on this objection. Due to the lack of any information in the record concerning these matters, we cannot review the propriety of the court's ruling.

Plaintiff also claims that her cross-examination of Henderson was unduly restricted when Henderson was testifying as a witness on her own behalf and on behalf of KAL. During this cross-examination, numerous objections were sustained. However, our examination of the portion of the record cited by plaintiff in support of this argument reveals that all of the objections were to questions which either (1) contained argumentative or conclusory language, (2) misrepresented prior testimony, (3) exceeded the scope of cross-examination, (4) lacked foundation, or (5) improperly requested information concerning prior discussions with attorneys. Thus the court did not improperly restrict plaintiff's cross-examination of Henderson.

We reach the same conclusion as to plaintiff's cross-examination of Professor Mortimer. In the portion of the trial transcript which plaintiff cites in support of her contention, the court sustained objections to questions as to whether Mortimer considered the facts stated in Henderson's deposition to be correct, but allowed plaintiff's counsel to question Mortimer as to whether he relied upon Henderson's version of the accident, as related at her deposition, in formulating his opinions. The court did not err in so limiting plaintiff's examination of Mortimer concerning his reliance on Henderson's deposition testimony. See generally *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322.

As a last matter, we consider whether the circuit court committed error in denying plaintiff's motion for leave to reopen the evidence following its directing a verdict as to count I. In view of our earlier determination that a directed verdict was properly ordered, albeit for the wrong reasons, we need not resolve this issue.

The judgment is affirmed.

Affirmed.

LUND and SPITZ, JJ., concur.