JAMES J. PERSON, Plaintiff-Appellant, v. GLENN R. BEHNKE, Defendant-Appellee.

Fourth District No. 4—92—0331

Opinion filed March 31, 1993.

Auler Law Offices, P.C., of Urbana (Robert I. Auler, of counsel), for appellant.

David E. Jones and Mark M. Flannery, both of Hinshaw & Culbertson, of Chicago (D. Kendall Griffith, of counsel), for appellee.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In April 1991, plaintiff, James Person, brought a legal malpractice action against defendant, Glenn Behnke, who had served as plaintiff's attorney in a divorce proceeding. In March 1992, the trial court granted defendant's motion to dismiss on the ground that plaintiff could not recover for the noneconomic damages arising from his loss of custody and visitation of his minor children because these damages actually constituted damages for emotional distress. Plaintiff appeals, arguing that the trial court erred in granting defendant's motion to dismiss.

We agree and reverse.

## I. BACKGROUND

In plaintiff's amended complaint filed in September 1991, he alleged that defendant committed legal malpractice by negligently representing plaintiff in his divorce proceedings in Indiana. In June 1986, plaintiff's wife moved to Indiana, taking their two children with her, and immediately initiated divorce proceedings in Indiana. Plaintiff retained defendant as his attorney. In essence, plaintiff alleged that defendant failed to take *any* action on plaintiff's behalf either in those proceedings or later, after an Indiana court entered a default judgment against plaintiff.

Plaintiff alleged that as a result of defendant's negligence, plaintiff (1) lost custody of his children and effective visitation with them, (2) lost all his interest in marital property that his wife had removed to Indiana, (3) was ordered to pay child support beyond his means, (4) was adjudged in arrears on child support, (5) was ordered to pay his wife's attorney fees, (6) had his wages garnished for the child support

arrearages, and (7) incurred additional legal fees in seeking (and obtaining) reversal of the default judgment entered against him in Indiana.

In December 1991, the trial court granted defendant's motion to dismiss plaintiff's complaint pursuant to section 2—615 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1991, ch. 110, par. 2—615). The court held that the supreme court's decision in *Collins v. Reynard* (Oct. 31, 1991), No. 70325, *reh'g granted* (Feb. 3, 1992), required dismissal of plaintiff's action because "it sounds in tort and is an action for attorney malpractice." In February 1992, the trial court, upon plaintiff's motion to reconsider, vacated its order granting defendant's motion to dismiss and reinstated plaintiff's action because it found that plaintiff was claiming noneconomic damages not addressed in *Collins*.

In March 1992, the trial court, upon defendant's motion to reconsider its decision to vacate its order of dismissal, concluded that plaintiff's claimed noneconomic damages essentially constituted a claim for "suffering and emotional distress or mental anguish." Citing this court's decision in *Segall v. Berkson* (1985), 139 Ill. App. 3d 325, 487 N.E.2d 752, the court thus held that such damages "are disallowed in a suit for attorney malpractice." The court again granted defendant's motion to dismiss.

## II. ANALYSIS

### A. *Standard of Review*

When reviewing a trial court's decision to dismiss a complaint under section 2—615 of the Code, a reviewing court must determine whether the complaint's well-pleaded allegations, when viewed in the light most favorable to the plaintiff, sufficiently establish a cause of action for which relief may be granted. (*Ziemba v. Mierzwa* (1991), 142 Ill. 2d 42, 46-47, 566 N.E.2d 1365, 1366; *Dix Mutual Insurance Co. v. LaFramboise* (1992), 149 Ill. 2d 314, 318-19, 597 N.E.2d 622, 624.) In doing so, a reviewing court must take all well-pleaded facts in the challenged complaint as true. *Ziemba*, 142 Ill. 2d at 47, 566 N.E.2d at 1366; *LaFramboise*, 149 Ill. 2d at 318, 597 N.E.2d at 624.

### B. *Application of Collins*

■■ Initially, we note that upon granting rehearing, the supreme court recently reconsidered its initial decision in *Collins* and held that "a complaint against a lawyer for professional malpractice may be couched in either contract or tort and that recovery may be sought in

the alternative." (*Collins v. Reynard* (1992), 154 Ill. 2d 48, 50.) The court went on to limit this holding to the specific field of lawyer malpractice. (*Collins*, 154 Ill. 2d at 52.) Thus, *Collins* supports plaintiff's claims that he can maintain a cause of action and seek damages based on the alleged malpractice of defendant, and the defendant has conceded as much. Accordingly, we reverse the trial court's dismissal of plaintiff's complaint and remand for further proceedings consistent with the supreme court's decision in *Collins*.

### C. *Plaintiff's Claim for Noneconomic Damages Resulting from His Loss of Custody and Visitation with his Children*

Even though we have determined that the supreme court's decision in *Collins* requires reversal regarding plaintiff's claims for economic damages due to defendant's alleged legal malpractice, we must still address plaintiff's claim for noneconomic damages caused by his loss of custody and visitation with his children. The trial court rejected this aspect of defendant's claim, explaining as follows:

> "Plaintiff argues that the court—and not he—characterized his damages as suffering and emotional distress, which of course are non-economic. It is impossible, however, for the court to categorize compensable damages from a loss of custody and visitation of plaintiff's minor children other than as suffering and emotional distress or mental anguish. Defendant correctly points out that *Segall v. Berkson* (1985), 139 Ill. App. 3d 325[, 487 N.E.2d 752], precludes such damages in this action."

Defendant cites *Segall* and *Maere v. Churchill* (1983), 116 Ill. App. 3d 939, 452 N.E.2d 694, as support for the trial court's ruling that emotional distress is not recoverable in a legal malpractice action sounding in negligence. Plaintiff argues that the damages he alleged for lost custody of, and visitation with, his children constitute noneconomic damages that differ from damages for emotional distress. Defendant responds that plaintiff's losses do not reflect "direct physical or monetary loss[es]." Instead, defendant argues that they only "affect[ ] one psychologically through one's emotions," and thus actually constitute emotional distress damages. Defendant further asserts that plaintiff "has suggested no alternative means of describing or measuring the damage flowing from loss of custody. It can only be measured in terms of emotional distress or mental anguish."

In *Maere*, the court held that plaintiffs could not recover for their " 'great mental anguish, emotional distress, disappointment and in-

convenience' " caused by their attorneys' alleged negligence in performing legal work for them. (*Maere*, 116 Ill. App. 3d at 943, 452 N.E.2d at 697.) In *Segall*, the plaintiff claimed that he suffered emotional distress because he did not obtain permanent custody of his son and had difficulty in obtaining visitation with his son due to his attorney's alleged legal malpractice. This court, citing *Maere*, held plaintiff's complaint insufficient to provide a basis for recovering damages based on an attorney's negligence. *Segall*, 139 Ill. App. 3d at 330-31, 487 N.E.2d at 756.

■ We disagree with defendant's assertion that plaintiff's claim for loss of custody and visitation constitutes a claim for mental distress. Although *Segall* and *Maere* retain their validity, they do not apply to this case. We hold that a valid claim exists for noneconomic damages resulting from a plaintiff's loss of custody and visitation of his children which allegedly resulted from an attorney's negligence.

In reaching this holding, we take particular note of a parent's ability to recover for the loss of society of the parent's child upon the wrongful death of the child. (See *Bullard v. Barnes* (1984), 102 Ill. 2d 505, 515-17, 468 N.E.2d 1228, 1233-34 (under the Wrongful Death Act (Ill. Rev. Stat. 1991, ch. 70, pars. 1 through 2.2), parents can recover for nonmonetary damages stemming from the loss of their child's society; indeed, parents are entitled to a presumption of a pecuniary injury in loss of a child's society); *Seef v. Sutkus* (1991), 145 Ill. 2d 336, 337, 583 N.E.2d 510, 511 (parents can maintain a cause of action to recover damages for loss of their stillborn child's society).) This recovery by a parent for the parent's loss of a child's society is separate from and exclusive of any mental suffering and anguish the parent underwent as a result of the child's death. (*Bullard*, 102 Ill. 2d at 514-15, 468 N.E.2d at 1233 (damages for mental anguish are not recoverable in a wrongful death action and are distinct from damages for loss of society); *Uhr v. Lutheran General Hospital* (1992), 226 Ill. App. 3d 236, 267, 589 N.E.2d 723, 744, *vacated* (March 9, 1993), No. 73410 (supervisory order); see also Illinois Pattern Jury Instructions, Civil, No. 31.07 (3d ed. 1992) (hereafter IPI Civil 3d) ("Measure of Damages—Wrongful Death—Factors Excluded" (grief and sorrow of the next of kin cannot be used in determining "pecuniary loss")).) "[P]ecuniary losses encompass loss of society damages for many facets of family relationships" (*Seef*, 145 Ill. 2d at 338, 583 N.E.2d at 511), and also include deprivation of the deceased's *companionship*, guidance, advice, *love*, and *affection*. *Bullard*, 102 Ill. 2d at 514, 468 N.E.2d at 1232; see also IPI Civil 3d No. 31.11 ("Damages—Loss of Society—Definition" ("society" means the mutual benefits received

from a family member's continued existence, including love, affection, care, attention, companionship, comfort, guidance, and protection)).

Nonetheless, defendant argues that after the supreme court's decision in *Dralle v. Ruder* (1988), 124 Ill. 2d 61, 529 N.E.2d 209, a parent cannot recover damages for the loss of society of a nonfatally injured child. Defendant points out that the *Dralle* court noted that allowing loss-of-society damages for nonfatally injured children would unduly enlarge tort liability, invite duplicative recoveries, and present difficulty in determining damages. (*Dralle*, 124 Ill. 2d at 69-70, 529 N.E.2d at 213.) Defendant contends that these same policy considerations should dictate our decision in this case.

In *Dralle*, the plaintiffs sued a pharmaceutical manufacturing company (and others) for damages arising from their son's birth defects and injuries received at birth. They based their claim for recovery on the loss of their son's companionship and society that resulted from these birth defects and injuries. The supreme court held that the plaintiffs could not recover under a theory of loss of society of their injured child because (1) their claim arose as the *derivative* consequence of an injury to their child (*Dralle*, 124 Ill. 2d at 73-74, 529 N.E.2d at 214-15), and (2) their son could maintain his own cause of action against the alleged tortfeasor (*Dralle*, 124 Ill. 2d at 68-69, 529 N.E.2d at 212). Further, the court in *Dralle* noted that the plaintiffs were not completely deprived of their child's companionship and society and commented on the difficult, "and perhaps impossible, task of evaluating—and assigning a monetary figure to—the reduced value of the parents' relationship with the affected child." *Dralle*, 124 Ill. 2d at 70-71, 529 N.E.2d at 213.

The *Dralle* court distinguished its holding from the holding in *Dymek v. Nyquist* (1984), 128 Ill. App. 3d 859, 469 N.E.2d 659. In *Dymek*, the court reviewed the plaintiff's claim for the loss of his son's society against his former wife and a psychiatrist based on their alleged conspiracy to separate plaintiff from his son by brainwashing his son against him. (*Dymek*, 128 Ill. App. 3d at 867-68, 469 N.E.2d at 665-66.) The court found that under those circumstances, it "should now recognize a cause of action for parental loss of a minor child's society and companionship." (*Dymek*, 128 Ill. App. 3d at 868, 469 N.E.2d at 666.) The *Dralle* court distinguished its holding from *Dymek* and *Kunz v. Deitch* (N.D. Ill. 1987), 660 F. Supp. 679 (divorced father had cause of action for loss of his son's society against his deceased wife's parents for their alleged attempts to put his son up for adoption), because they were "direct interference" cases—claims based on the *direct interference* with the child-parent relationship.

(*Dralle*, 124 Ill. 2d at 73, 529 N.E.2d at 214.) The *Dralle* court found that because the plaintiffs in *Dralle* based their claims on the derivative consequence of injuries to their child, those claims did not involve "direct interference" and thus differed from the claims in *Dymek* and *Kunz*. *Dralle*, 124 Ill. 2d at 73, 529 N.E.2d at 214.

Consistent with the supreme court's decision in *Dralle*, we find that here plaintiff's claim for loss of his children's society results from the "direct interference" by defendant with plaintiff's child-parent relationship. Plaintiff completely lost contact with his children for an extended period of time (approximately five years) because of defendant's conduct. This complete lack of contact with his children directly resulted from defendant's alleged inaction in plaintiff's divorce proceedings. Further, plaintiff's complaint alleges that defendant's negligence directly affected the parent-child relationship, which defendant owed a duty as plaintiff's lawyer to try to protect and nurture through plaintiff's divorce proceedings.

Last, regarding the supreme court's concerns about "permitting both the injured victim and his family members to pursue their own actions" (*Dralle*, 124 Ill. 2d at 70, 529 N.E.2d at 213), we do not know of any such action brought by a child of a parent in a divorce proceeding alleging legal malpractice by that parent's counsel, resulting in an adverse ruling *to the child* regarding that parent's custody or visitation of the child. We frankly do not see how such a lawsuit could have any merit because lawyers in a divorce proceeding owe a duty to their clients—the parents—not to the children of their clients. Accordingly, we find that *Dralle* does not require us to dismiss plaintiff's claims for damages resulting from his loss of custody and visitation with his children.

However, we are mindful of the concerns expressed by the court in *Dralle* about broadening the scope of tort liability, and we will address those concerns. First, regarding the determination of damages from loss of society, we note that while this may prove difficult, juries have been making this determination for quite some time. (See IPI Civil 3d Nos. 31.01 ("Measure of Damages—Wrongful Death—Minor Child Decedent—Lineal Next of Kin Surviving"), 31.11 ("Damages— Loss of Society—Definition").) Second, we have already discussed the court's concerns regarding duplicative recovery, and we emphasize that we limit our holding here to a *parent* involved in a divorce proceeding. We specifically decline to extend our holding to "[g]randparents, siblings, and friends suffering similar losses of society." *Dralle*, 124 Ill. 2d at 70, 529 N.E.2d at 213.

940

■ Last, and most important, we recognize that this cause of action has the potential to explode into a plethora of meritless suits brought by disgruntled parents who simply do not like the result their lawyers obtained for them in divorce proceedings and—in hindsight—think that their lawyers (or some other lawyer) could (and should) have done a better job. Accordingly, we limit the scope of our holding to only those most egregious cases of legal malpractice by focusing on the conduct of the defendant-attorney. In *Cogan v. KAL Leasing, Inc.* (1989), 190 Ill. App. 3d 145, 153, 546 N.E.2d 20, 25, this court found that the standards set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, for evaluating claims of ineffective assistance of counsel in criminal cases provided an appropriate gauge for a claim of ineffective assistance of counsel in a civil law context. We now adopt the *Strickland* standards as the criteria for judging whether an attorney's alleged malpractice in representation of that attorney's client in a divorce proceeding can serve as the basis for the client's subsequent claim that he lost custody or visitation of his child as a direct result of the attorney's alleged malpractice.

To prove ineffective assistance of counsel under *Strickland*, a criminal defendant must prove that (1) his counsel's performance was seriously deficient in that it fell below an objective standard of reasonableness, and (2) this deficient performance prejudiced his case. (*People v. Odle* (1992), 151 Ill. 2d 168, 172, 601 N.E.2d 732, 734.) Also, this standard requires " 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (*Cogan*, 190 Ill. App. 3d at 153, 546 N.E.2d at 25, quoting *People v. Barnard* (1984), 104 Ill. 2d 218, 237-38, 470 N.E.2d 1005, 1012.) Furthermore, under this standard, a reviewing court will not review counsel's conduct which involves an exercise of judgment, discretion, strategy, or trial tactics. *People v. Jones* (1992), 234 Ill. App. 3d 1082, 1098, 601 N.E.2d 1080, 1090.

To prove that an attorney negligently represented a client in a divorce case resulting in a claim for loss of custody and visitation, the plaintiff must prove (1) that his counsel's performance fell below an objective standard of reasonableness, (2) that this deficient performance did not involve an exercise of judgment, discretion, strategy, or trial tactics, and (3) that this deficient performance seriously prejudiced his case such that a reasonable probability exists that without the unprofessional errors, the plaintiff would have received custody or visitation.

■ Therefore, under this standard, a plaintiff cannot recover under a loss-of-society theory merely because his attorney could have handled his divorce case differently or was unable to obtain more or better visitation rights. In the present case, plaintiff alleged that defendant did almost *nothing* on his behalf. Thus, this claim does not challenge defendant's judgment, strategy, or trial tactics.

We emphasize also that a plaintiff must allege that he *lost* custody or visitation, not just that he was disappointed in the *amount* of visitation granted. Here, plaintiff alleged that he lost "effective visitation" with his children, as well as losing custody. We are not sure what that means, but because the trial court dismissed the complaint under section 2—615 of the Code, we have no facts before us to explain that allegation further. The parties can pursue that matter on remand, and we withhold further comment.

### III. Conclusion

For the reasons stated, we reverse the judgment of the circuit court and remand for further proceedings in accordance with the views expressed herein.

Reversed.

KNECHT and GREEN, JJ., concur.